# CHARLESTON.

IDA E. MUSICK *v.* HOME INSURANCE COMPANY *et als.*
*Defendants Below,* COMMERCIAL CREDIT COMPANY.
*Plaintiff in Error.*

## (No. 6100)

Submitted March 7, 1928.    Decided March 13, 1928.

TRIAL—*Binding Instruction to Find for Plaintiff on Theory of Existence of Defendant's Agency to Secure Insurance, Not Shown by Evidence, Held Erroneous.*

A binding instruction to find for plaintiff on the theory that the relation of principal and agent existed in the transaction out of which plaintiff's claim arose, is fatally erroneous, where the evidence does not directly or by implication show such relation.

(Trial, 38 Cyc. p. 1651 [Anno].)

(NOTE: Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

Error to Circuit Court, Mingo County.

Action by Ida E. Musick against the Home Insurance Company, the Commercial Credit Company and others. Judgment for plaintiff against defendant Commercial Credit Company, and it brings error.

*Judgment reversed; verdict set aside; new trial awarded.*

*Wm. B. Hogg,* for plaintiff in error.
*Stafford & Copley,* for defendant in error.

LIVELY, JUDGE:

This is an action of assumpsit by Ida E. Musick against the Home Insurance Company of New York, Commercial Credit Company, Nash-Williamson Motor Car Company, and A. L. Chafin, for breach of an agreement to secure fire insurance on an automobile owned by the plaintiff. In the trial court, judgment was entered upon a jury verdict of $1,200.00 returned against the defendant Commercial Credit Company alone. This writ followed.

The assignments of error relied upon for reversal are that the trial court erred, first, in overruling the demurrer to the plaintiff's amended declaration; second, in giving to the jury the only instruction in the case; and third, in refusing to set aside the verdict and award the plaintiff a new trial upon the ground that the evidence does not sustain the verdict.

Because of the disposition which will be made of this case, we deem it unnecessary to consider the first assignment of error. However, we might say in passing that the amended declaration is probably defective by reason of the declaring against the defendants, individually, in separate counts.

The remaining assignments of alleged error necessitate a detailing of the evidence. It appears that in May, 1925, defendant Chafin, a salesman representing the Nash-Williamson Motor Car Company, sold to the plaintiff a Nash touring car for the sum of $1,841.06, $736.42 of which was paid in cash, and the balance was represented by a promissory note for $1,104.64 payable in eight monthly installments. The sale was made under a conditional sales agreement.

The contract between the plaintiff and the motor car company required plaintiff to insure the car against loss by fire and theft for a sum not less than the amount owing, and until fully paid, "payable to and to protect the interest of the seller, and the seller may place * * * said insurance for the buyer at the buyer's expense if the seller so elects." There was contained the further provision that the buyer agreed not to permit the car to be used for passenger hire. The purchase price of the car included the sum of $132.16, which was for services, insurance and interest. The motor car company assigned the purchase money note and the conditional sales contract to the defendant Commercial Credit Company, it being understood that the credit company was to secure the necessary insurance. The credit company procured an insurance policy for a private vehicle and a copy of the policy was sent to the plaintiff. Five months after the purchase of the car it was destroyed by fire while being used in the taxi business by the plaintiff's brother. The insurance company refused to pay the plaintiff's claim because the policy had covered a private vehicle.

Chafin, the agent of the motor car company (which company went out of business shortly after the contract between it and the plaintiff had been made), knew that the plaintiff was purchasing the car for use as a taxicab. He charged her, according to his testimony, a sum which was sufficient to cover taxicab insurance in conformance with the rates prescribed by the credit company, which ordinarily discounted the paper of the motor car company. It appears from the defendant credit company's evidence that the amount so charged was $17.00 less than that which should have been charged for taxicab insurance, although it was in excess of the sum required to secure insurance for a private vehicle. A buyer's statement accompanied the contract sent to the credit company. In this statement after the question asking whether the car was to be used for hire, there was placed an "X". The buyer's statement, which was addressed to both the credit company and the motor car company, was not made a part of the conditional sales contract. After having deducted its proper charges, including that of securing fire and theft insurance for a private vehicle, the credit company sent the motor car company a check for the difference between the amount of the note and the charges.

It is the contention of the plaintiff in error, the credit company, that the assignment of the note and the conditional sales contract to it did not by reason of the assignment create a privity of contract between the plaintiff and the defendant credit company, and therefore the plaintiff has no right of action against the credit company for the alleged failure to procure the proper kind of insurance for her motor vehicle.

It is maintained by the plaintiff below that the credit company was acting as subagent of the motor car company in procuring the insurance policy contemplated by the contract between the plaintiff and the motor car company, and that the circumstances having been such that it was chargeable with notice of the character of insurance required, it was liable to the plaintiff for its failure to perform that duty. The circumstances relied upon to charge the defendant credit company with notice are, first, the information contained in

the buyer's statement that the car was to be used for hire; second, the fact that the balance of the purchase money was payable in eight monthly installments, the plan ordinarily adopted in the sale of vehicles for taxi purposes; and third, the circumstance that the insurance fee charged was in excess of that required for insurance on private vehicles.

The only instruction in the case was one given on the court's own motion over defendant's objection. It told the jury that:

> "If you believe from the evidence that the plaintiff paid to Nash-Williams Motor Car Company an amount represented to her by said company as sufficient to pay all charges necessary in procuring insurance on car for taxi purposes, as well as all other charges incident to the purchase of the car in question, and that said company had authority to act for the Commercial Credit Company, and the plaintiff was not by either company notified that said insurance was not issued for taxi service on said car and no refund on premium paid plaintiff, then you should find for plaintiff such amount as from the evidence the plaintiff is entitled to recover."

It is contended by the defendant Commercial Credit Company that the instruction is erroneous because it is based upon a theory of agency which is not supported by the evidence.

In passing upon the correctness of the court's action in this regard, it is not necessary to determine whether the relationship of the parties should be considered from the standpoint of assignor or assignee or that of principal and agent, for, viewed from any angle it is erroneous. See *De Shields* v. *Insurance Company,* (S. C.) 118 S. E. 817. The instruction is evidently based upon the proposition that the motor car company was acting as the agent of the credit company, a theory which is not supported by the evidence, and one that is entirely different from that advanced by either party. As pointed out heretofore, it is the contention of the plaintiff that the credit company became the subagent of the motor car company in procuring the insurance policy, and consequently was directly liable to the plaintiff. Or, in other

words, a subagency was established with the consent and authority of the plaintiff, creating a privity between the credit company and the plaintiff as principal, and making the former liable to the latter for its neglect to procure the proper kind of insurance. If the subagency was not so established there would be no privity between the subagent and the principal. Vol. 1 Mechem on Agency, (2nd ed.), sections 332 and 333.

Perhaps it might be of some benefit to say further, that granting, but not deciding, that it would have been proper to have given an instruction based upon a theory of subagency as contended for by plaintiff, such an instruction should have included a direction that the jury were entitled to consider the implied ratification of the subagent's act by the principal, arising from the receipt of the insurance policy covering a private vehicle, without notifying her alleged subagent of its mistake. Vol. 1 Mechem on Agency (2nd ed.), sections 459 and 1272. It is apparent that in the instant case the failure to include such direction in the instruction would be prejudicial to the defendant credit company. For, under the facts of the instant case, it would be exceedingly harsh to hold the credit company responsible for the alleged failure to secure the insurance desired by the plaintiff. It is true that there were certain circumstances which may have tended to put the credit company on notice as to the character of insurance requested. But on the other hand, there was the contract which contained a provision that the vehicle was not to be used for hire. The credit company relied upon the express terms of the contract. Its whole course of action makes it clear that it had interpreted the kind of insurance required to be that pertaining to a private vehicle. It promptly returned to the motor car company the excess which had been sent to it. And what is most important, before the fire occurred a copy of the fire insurance policy covering a private vehicle and not a vehicle for hire, was received by the plaintiff. She took no steps to have the error corrected, and it would work an injustice upon the credit company to permit her now to say that it was her understanding that the policy covered a vehicle for hire.

It may be well to suggest that inasmuch as the contract provided that insurance on the car should be procured by the buyer, or by the seller at its option, to protect the interest of the seller in the car, and not to protect the interest of the buyer, the plaintiff has not suffered damage except to lose the security which was provided and which she claims she paid for, out of which the balance of purchase money owing on the car by her would be paid, if it had not been lost by default of the seller. This is a question which might more properly arise in a suit on the purchase money note as described in the contract; and is mooted here for whatever consideration it may have, if a new trial is had. This record does not show whether plaintiff has discharged the purchase money note. It may or may not be outstanding.

We are of the opinion that the giving of the court's instruction was erroneous and constituted reversible error.

The judgment will be reversed, the verdict set aside and a new trial awarded.

*Judgment reversed; verdict set aside; new trial awarded.*