C. H. CLOSTERMAN *v.* B. J. LUBIN *et al.*

(No. 7408)

Submitted January 17, 1933. Decided February 14, 1933.

*Fitzpatrick, Brown & Davis* and *Marcum, Lovins & Gibson,* for plaintiff in error.

*T. W. Peyton,* for defendants in error.

KENNA, JUDGE:

On the 14th day of March, 1930, the plaintiff, C. H. Closterman, and the defendants, B. J. Lubin, Martha Lubin, J. Lubin and Clara Lubin, were stockholders in Dickinson Furniture Company, a corporation doing an extensive retail furniture business in the City of Huntington. Out of a total of 840 shares of common stock issued and outstanding, J. Lubin held 86, B. J. Lubin 742, Clara Lubin 5 and the plaintiff, C. H. Closterman, 2 shares. Both plaintiff and the defendants were also owners of the Class A or Class B of the preferred stock of the company, neither of which had voting power. Plaintiff Closterman, in addition, held two notes of the com-

pany aggregating $15,000.00. It does not appear whether the Lubins were also directors of the corporation.

On March 14, 1930, plaintiff, defendants and certain of the other stockholders of the corporation (not, however, including all) entered into a written contract for the purpose of agreeing to liquidate the business of Dickinson Furniture Company and agreeing to transfer its remaining assets to a new corporation. The agreement recites substantially that while the company is indebted to the extent of approximately $120,-000.00, and is in need of cash, it nevertheless has valuable assets and is entirely solvent; that it is doing business on too large a scale and should be liquidated, and has recently engaged Joseph P. Lynch Sales Company to conduct a closing out sale of its merchandise; that the proceeds of this sale are to be used to discharge the indebtedness of the company in so far as that can be effected, but that it is not believed a sum sufficient for that purpose will be realized. The agreement provides that a new corporation shall be organized with an authorized capital of $100,000.00 divided into 1,000 shares of $100.00 par value, 800 of which are to be common and 200 preferred; that when the corporation shall be organized and the sale of merchandise completed, the remaining assets of the Dickinson Furniture Company shall be transferred to the new company, which will assume its indebtedness, the consideration to the Dickinson Company to be 500 shares of the common and 113 shares of the preferred stock of the new corporation. Closterman undertakes to buy the preferred stock of the Dickinson Furniture Company which is in other hands (68 shares), cancel its $15,600.00 indebtedness to him and surrender his stock for cancellation in consideration that there shall be issued to him 200 shares of the common and 68 shares of the preferred stock in the new corporation. This the other parties to the agreement agree to have done. The remaining stock of the new corporation received by Dickinson Furniture Company was to be disposed of by transferring 200 shares to J. Lubin and the remaining 200 shares to B. J. Lubin (there is a discrepancy at this point in the paper itself, since the Dickinson Furniture Company was only to receive 500 shares of common stock and 600 shares of common stock is disposed of by the agreement), the surrender of their stock in the old

corporation to be the consideration for issuing to them the stock in the new company. In the agreement, J. Lubin undertakes to lend to the new corporation the sum of $20,000.00 as a part of the consideration for the other parties to the contract joining therein. The Dickinson Furniture Company is to continue in business, the new corporation to collect, in the name of Dickinson Furniture Company, the accounts of the Dickinson Furniture Company transferred to it, and the new company is to take over its lease under the terms of the contract. The contract then goes on with other terms and provisions with which we are not directly concerned in this suit.

There seems to be no dispute between the parties concerning the organization and transfer of the assets to the new corporation, which was subsequently done; the new corporation being organized under the name of Girards, Inc.

After the organization of the new corporation, difficulties between the parties began to develop. J. Lubin did not immediately make the advance of $20,000.00 to the new corporation as he had undertaken to do. An opportunity to sell its assets to the Lewis Furniture Company arose. Plaintiff says that J. Lubin was very anxious to be relieved, as were the other defendants for him to be, of his obligation to lend to the new corporation $20,000.00, and for that reason they all were extremely desirous that the sale to the Lewis Furniture Company go through; and that he, plaintiff, always objected to the sale to the Lewis Furniture Company as it was in his judgment a losing proposition. Plaintiff alleges that B. J. Lubin offered to purchase his stock in Girards, Inc., along with the note of Dickinson Furniture Company for $5,000.00 held by him for the sum of $20,000.00, to be paid in eighteen monthly installments, with interest, represented by the notes of B. J. Lubin, to be indorsed by Clara Lubin, Martha Lubin and J. Lubin. Plaintiff contends that in making this proposal, B. J. Lubin was the authorized agent of the other three, and was acting for them. Plaintiff alleges that he accepted the proposal and that a contract between him and the defendants resulted. This they all categorically deny.

Plaintiff alleges that the contract thus made was breached by the defendants. After the alleged breach, he brought his

suit in chancery seeking specific performance of the alleged contract. A demurrer was interposed and sustained to the bill and amended bill of complaint on the ground that plaintiff had an adequate and complete remedy at law. Thereafter, the cause was transferred to the law side of the court as an action in assumpsit. All of the defendants appeared.

After the overruling of a demurrer to the second count of plaintiff's declaration, the first count being the common counts in assumpsit, defendants filed their special pleas Nos. 1 and 2. In special plea No. 1, they deny the indorsement and delivery of the eighteen promissory notes, comprising the purchase price to be paid to Closterman under the declaration, and deny further that they ever promised or agreed to make and indorse said notes. In the second special plea, they say that the $5,000.00 note, described in plaintiff's declaration and sued on, has been paid by Dickinson Furniture Company. In addition to these pleas, the defendants plead the general issue. The plaintiff filed his special replications to the defendants' special pleas, the first of which recites merely that the promissory notes were made, indorsed and delivered. The second special replication simply alleges that the $5,-000.00 note was not paid by Dickinson Furniture Company but was in fact assumed and paid by Girards, Inc. On the issues thus made up, the jury returned a verdict for the plaintiff in the sum of $16,800.00, giving the defendants credit for the payment of the $5,000.00 note as a deduction from the $20,000.00 purchase price, and adding interest to the $15,000.00 remaining.

The errors complained of in the brief of plaintiffs in error are (1) that the trial court erred in overruling the demurrer to the second count of the declaration; (2) that the trial court erred in giving instructions Nos. 1 and 2 at the instance of the plaintiff; (3) that the trial court erred in overruling the motion of the defendants, and each of them, to set aside the verdict and grant the defendants a new trial.

The last assignment is subdivided into the following propositions; (a) that the verdict is without evidence to support it; (b) that the verdict should not be based upon the full contract price; (c) that there is no evidence to sustain the verdict as to Martha Lubin; (d) that there is no evidence

that J. Lubin and Clara Lubin contracted with plaintiff below; (e) that the alleged agreement of J. Lubin and Clara Lubin to indorse the notes of B. J. Lubin, being oral, is unenforceable under the statute of frauds; (f) that the verdict is against the weight of the evidence.

In so far as the overruling of the demurrer to the plaintiff's declaration is concerned, a close reading of the second count discloses that it does not, in the explicit language required, allege a promise on the part of the defendants. However, this ground of demurrer was not set forth in the written demurrer of the defendants; and, since it was not, upon this particular question we must regard the record as though it contained no demurrer. When a declaration in assumpsit is bad because it alleges a promise by implication or intendment only, instead of explicity as required, in the absence of a demurrer the defect is cured after verdict by the statute of jeofails. *Koen* v. *Brewing Company*, 69 W. Va. 94, 70 S. E. 1098. The assigned grounds of demurrer are (1) that the plaintiff's cause of action sounds in tort and not in contract; and (2) that the count is vague and uncertain so that it does not inform defendants of plaintiff's cause of action. As to the first assignment of demurrer, the fact that plaintiff might sue in tort, not conceding that that is the case here, is no valid objection to his action in assumpsit. He can waive the tort and sue for money had and received. As to the second assignment of demurrer, we believe that plaintiff's declaration in the second count contains sufficient allegations to show his cause of action and to inform defendants thereof with reasonable certainty. We therefore do not believe that the learned trial judge erred in overruling the demurrer of the defendants to the second count of plaintiff's declaration.

Plaintiff in error urges strongly that the proof of the plaintiff below, viewed most benignly, is still insufficient to support the verdict even as to B. J. Lubin. A motion sufficient to raise this contention was urged and lost in the court below.

In considering this assignment of error we get our bearings by reference to the plaintiff's declaration. It contains the common counts in assumpsit, which, of course, allege no particular contract. By reference to the second count of the

declaration, we find plaintiff's contention to be that in consideration of B. J. Lubin's notes, indorsed by the other defendants, aggregating $20,000.00, plaintiff, on his part, was to do five things: (1) to release defendants from the obligations of a written contract of March 14, 1930, under which J. Lubin was to contribute $20,000.00 as a loan to Dickinson Furniture Company; (2) to assign to defendants 149 shares of common stock in Girards, Inc.; (3) to assign the note of Dickinson Furniture Company in the sum of $5,000.00; (4) to remain with Girards, Inc., as secretary-treasurer for about thirty days; (5) pending the detailed closing of the contract to vote his shares in Girards, Inc., as directed by the defendants. Closterman was the sole witness for the plaintiff, and it is to his testimony alone that we must look. Undoubtedly, the case was tried upon the theory of plaintiff's second count, the sale of the stock in Girards, Inc., being the main undertaking on his part. Is the testimony of Closterman sufficient to go to the jury in an effort to recover on the theory of plaintiff's second count?

The pivotal point of Closterman's testimony on this question is found at page 59 of the printed record in the following answer to a question propounded: "On May 14, 1930, B. J. Lubin came to me and stated that his father was in poor health and we have an opportunity to sell Girards, Inc., to the Lewis Furniture Company, if you will agree to release J. Lubin from putting up the $20,000.00, as it was agreed in that contract that he would lend the $20,000.00, and by him putting in the $20,000.00 that would bolster up the company and the assets of the Dickinson Furniture Company at that time they hoped to sell this $20,000.00 would give us a chance to make the collection. He told me if you will release J. Lubin and consent to the sale of the assets of Girards, Inc., to the Lewis Furniture Company, that will put you in the same position you were in before this contract was entered into. They did not want to carry out the contract of *May* (March) 14th, and that would leave me a creditor of the Girards, Inc., to the extent of $20,000.00. Now I stated that I would agree to that. The excuse was that J. Lubin—(Counsel interrupts witness). Q. Wait a minute! What about the payment and the terms of it, etc. Just state what the

conditions were, Mr. Closterman? A. He said that he would give notes to the amount of $20,000.00, that was eighteen of these maturing monthly, at six per cent interest. These notes would be indorsed by his father, J. Lubin, by his mother, Clara Lubin, and by his wife, Martha Lubin, and himself.''

It will be observed that this part of Closterman's testimony covers two points, and two points only, of the contract declared upon. According to this testimony, in exchange for $20,000.00 in the notes indorsed as described in the question and answer, he was (1) to consent to release J. Lubin from the obligation of the contract of March 14, 1930, to loan the Dickinson Furniture Company $20,000.00, and (2) to agree to the sale of the assets of Girards, Inc., to Lewis Furniture Company. The question and answer contain nothing with' reference to the sale by Closterman of his *stock* in Girards, Inc., to the defendants. If we are to find this evidence, we must look to other parts of Closterman's testimony.

We find next at page 65 of the printed record that the following question was propounded and the following answer made by Closterman: ''I will ask you to state whether or not you have been ready, willing and able at all times to transfer and deliver to the defendants your shares of stock in Girards, Inc., issued to you and as contemplated by such agreement? A. Yes.''

This question is obviously leading but was not objected to on that ground. It is in two aspects. It is intended to elicit a response as to Closterman's readiness, willingness and ability to comply with his contract, or alleged contract, and deliver the stock; and it assumes, in the second place, that such a delivery of stock was contemplated by ''such agreement''. It does not refer to the agreement in the declaration set out. It necessarily refers to an agreement which it is presumed Closterman had already testified to. As we have seen, by reference to the testimony of Closterman at page 59, which is the only place in the record up to this point where he testifies as to his undertaking with defendants, this presumption is not valid. The question and answer, of themselves, do not establish a binding agreement on the part of Closterman to sell his stock to defendants.

The next point at which Closterman makes reference to the sale of stock to the defendants is found at page 75 of the printed record. There, in response to a question on cross-examination, he says: "That was afterwards, possibly one week or so after that. He wanted me to put it in the clause of that contract that in case the sale did not go through to Lewis Furniture Company they would be released from buying my stock, and that also he would like to have it in the contract that I would act as secretary and treasurer for thirty days after it was taken over by the corporation. At the time May 15th, I offered to resign as secretary and treasurer. Mr. Lubin says, 'Don't you think of doing that or contemplating that; don't you let him think you are contemplating it, for if you do, Mr. Lewis will think something is wrong if you step out as secretary and treasurer at this particular time and it might queer the deal.' Q. You did go up there the morning the agreement was drafted as it was, didn't you? A. B. J. Lubin had such an agreement made. Q. But you went up there yourself, did you not, Mr. Closterman? A. Why, I went up there, yes."

This testimony obviously refers to the tentative draft of an agreement prepared by Mr. S. S. McNeer and relates to the obligation provided for in that contract, under which Closterman was to sell his stock to the defendants. The draft prepared by McNeer was subsequently abandoned and nothing was done toward its execution.

Again, at page 73, there is a reference to sale of stock by Closterman embodied in the following question and answer: "Q. To whom did you offer your resignation? A. Why, I stated to Mr. B. J. Lubin—I stated at that time, if I sold my interest and they bought my stock I was no longer interested and I would get out of the way and not hamper them in any way. They could then do as they decided to sell the Lewis Furniture Company or they could do what ever they wanted to do with their assets."

Again, the testimony is insufficient to establish a binding agreement or contract. Its own phraseology shows that it was intended to explain, not the contract itself, but what took place in some of the negotiations leading up to a possible contract.

We believe that in the foregoing we have. quoted every single part of the testimony of Closterman that might be taken even remotely as establishing a contract for the sale of his stock to B. J. Lubin. We are convinced that there will not be found in the testimony quoted, nor in any other part of the plaintiff's testimony which went to the jury, evidence sufficient to sustain a contract such as that declared upon in plaintiff's second count. Obviously, the case was tried upon the theory of plaintiff's second count. The instructions bear this out, and plaintiff's instruction No. 2 could only have been proper in the event, after all the testimony was in, he still conformed to the theory of his second count.

As opposed to the contention of defendant in error, based upon the Closterman testimony, to the effect that there was an agreement on the part of Closterman to sell his stock to the defendants, we have the testimony of Mr. S. S. McNeer. Mr. McNeer is a practicing attorney in the city of Huntington and represented, as counsel, the Dickinson Furniture Company and its interests. Closterman, J. Lubin and B. J. Lubin were stockholders and officers of the Dickinson Furniture Company, and it is quite natural that Mr. McNeer should interest himself in trying to help iron out the difficulties between them. He testifies that at a time when Closterman and the Lubins were not in accord with reference to the sale of the assets of Girards, Inc., to Lewis Furniture Company, he, McNeer, in an effort to compose their differences, suggested, in Closterman's presence, to B. J. Lubin that he buy Closterman's stock in that corporation. He testifies that B. J. Lubin at once stated that he could not do so because Closterman, as secretary-treasurer of that corporation, was the only person who was letter-perfect as to the figures of assets and liabilities which would enter into a calculation of stock value; that he, Lubin, knew very little of such matters, and that consequently Closterman would have a great advantage in such a transaction. McNeer says that on the same day that he had such a discussion with Closterman and B. J. Lubin, Closterman came to his office and asked him to prepare a draft of contract under which he, Closterman, would sell his stock in Girards, Inc., to the Lubins. McNeer made notes of the suggestions of Closterman, and the next morning blocked up a

tentative draft of contract which is introduced in evidence. B. J. Lubin and Closterman came to his office after the tentative draft was transcribed, he handed copies of it to each of them, and Closterman displayed quite a little irritation and resentment at some of its terms. He left the office, taking with him a draft of the tentative contract, and nothing more was done about its execution.

Closterman took the witness stand after McNeer had testified, and, while his testimony in chief is in conflict, to a degree, with the testimony of Mr. McNeer, it is perhaps worthy of note that in rebuttal he denies not one word of it.

In this state of the record, we are of opinion that Closterman's testimony is insufficient to establish an agreement or binding contract for the sale of his stock to the Lubins. The most that can be said, in the light of the testimony of S. S. McNeer, is that there was a tentative understanding to that effect which was not to become binding until reduced to writing. This was never done. Under the rule too well recognized to require the citation of authority such a situation creates no enforceable agreement.

Having determined that the evidence will not support a verdict as to B. J. Lubin, because it does not show a binding agreement as laid in plaintiff's declaration, it is unnecessary to decide the other assignments of error. However, since the case may be retried before a jury, some further observations upon this record may be helpful.

J. Lubin and Clara Lubin are shown to have been husband and wife. B. J. Lubin was their son and Martha Lubin was his wife. These relationships, of course, are not sufficient grounds for inferring that B. J. Lubin was authorized to speak for and contractually bind any one or more of the other three. Neither is the fact that they were all associated as stockholders and officers of the Dickinson Furniture Company in the first instance and of Girards, Inc., later, sufficient to raise such an inference; nor can the family relationship, combined with proof of the association as stockholders, be considered sufficient. Something beyond these circumstances, and beyond the fact that we might be warranted, on the basis of the relationships shown, in assuming that added proof of agency would find greater credence than would or-

dinarily be given to it, must be shown before a verdict on the theory of agency can be supported. Let us see to what we are referred as furnishing this indispensable added proof.

Counsel for the defendant in error refer to the testimony of Closterman at page 63 of the record. That testimony is to the effect that B. J. Lubin did actually sign the notes in question; that Martha Lubin indorsed the notes in his presence, and that Clara Lubin agreed with him that she would indorse them. Closterman also testified that J. Lubin agreed to indorse the notes. The printed record has been exhaustively scrutinized for evidence tending to show that J. Lubin, Martha Lubin and Clara Lubin in any manner authorized B. J. Lubin on their behalf to enter into the proposal to buy the Closterman stock other than that just recited. We find none, nor does counsel for the defendant in error in his brief refer us to any point in the record where such evidence can be discovered.

Plaintiffs in error complain because oral testimony went to the jury tending to establish that Martha Lubin, Clara Lubin and J. Lubin had promised to indorse certain notes of B. J. Lubin. It is argued that the statute of frauds would intervene and preclude such proof of the understanding. The question of the statute of frauds is first introduced in the assignments of error in this court. Nothing appears below in objection to the testimony nor in the motion to set aside the verdict as raising that question. In this state of the record, the defendants below cannot raise the question here because it has been waived. *Eaves* v. *Vial,* 98 Va. 134, 34 S. E. 978; *Moore Lumber Co.* v. *Walker,* 110 Va. 775, 67 S. E. 374.

The plaintiff in error complains that the verdict of the jury is based upon the full contract price of the stock and negotiable note for $5,000.00 that Closterman is alleged to have sold. The contention advanced is that the true measure of damages is the difference between the market price and the contract price. As between these two rules for measuring damages in the case of a breached contract for the sale of personal property, the demarcation seems to depend upon whether title has or has not passed to the purchaser. If the title has not passed and the goods remain in the seller, the measure is the difference between the contract price and the

market price. If title has passed to the purchaser and the contract is breached, then the seller seems entitled to sue for the full contract price, holding the goods for the buyer. It would seem, therefore, that on this question the answer lies in determining whether the title had passed to the purchaser of the stock and note that Closterman says he agreed to sell. The note was hypothecated and not in Closterman's possession. The defendants knew this. It was retired by the check of the Dickinson Furniture Company and cancelled. Closterman contends that this was done as a part performance of his contract of sale, while defendants say that it was done at Closterman's request and as a liquidating dividend in Girards, Inc. Either theory is consistent with the passing of title in the note. As to the stock, Closterman has testified that his agreement of sale (assuming that there was an agreement) contemplated that the stock was not to be transferred on the books of the company until a later date; that the certificates were to be delivered later; that he was to continue to act as secretary-treasurer of Girards, Inc., and was to vote the stock at the direction and for the benefit of the defendants in all the stockholders' meeting. This, he testifies, he did. According to Closterman, he made the kind of delivery contemplated, by treating the stock after the contract was made, as being owned by the defendants. Corporate stock is personal property. The actual indorsement and delivery of stock certificates is not essential to pass title in the shares. The beneficial interest therein is assigned by parol. *Lipscomb* v. *Condon,* 56 W. Va. 416, 49 S. E. 392. Taking Closterman's testimony as true on the kind of delivery contemplated and as to his performance of that phase of his alleged contract, we therefore conclude that there was evidence sufficient to go to the jury, if the contract itself had been proven, on the question of whether title in the stock he undertook to sell had actually passed to the purchaser. If it had and if he was holding the stock for defendants and subject to their order, then his measure of damages is the full contract price. Instructions on this question might have been of aid to the jury, but since none were asked for or given we cannot assume, after verdict, that the jury acted under a misapprehension.

Plaintiff in error complains of instruction No. 1 given on behalf of the plaintiff below. That instruction reads as follows:

"The Court instructs the jury that if they find from the evidence in this case that the defendants entered into a certain agreement, the terms of which were mutually understood and agreed upon, the same is in all respects as valid an obligation as written a contract would be if the same were executed, and neither party is at liberty to refuse performance, and if you further find that the said agreement and understanding was made by the plaintiff and by the defendants and that the plaintiff has performed part thereof and is now and has been ready, able and willing to perform the other part thereof as contemplated and agreed upon, and that the defendants have failed and refused to perform on their part, that then and in such event your verdict shall be for the plaintiff."

Plaintiff in error says that this instruction is a binding one, is misleading and calculated to confuse the jury, and is vague and uncertain. In the light of what has already been said, this instruction is bad because it necessarily assumes that B. J. Lubin was the agent of Martha Lubin, Clara Lubin and J. Lubin in the making of the contract. *Musick* v. *Insurance Co.*, 105 W. Va. 341, 142 S. E. 436. We are of opinion that there is not sufficient proof to go to the jury on that question. The instruction is bad also because it is uncertain. It is predicated "upon a certain agreement". What agreement? An oral agreement entered into by B. J. Lubin under which Clara Lubin, Martha Lubin and J. Lubin were to indorse his negotiable note? It might be inferred that an oral agreement is meant. But there is in evidence another oral agreement to which all of the parties to the suit were parties. The agreement to sell the assets of Girards, Inc., to Lewis Furniture Company was oral. True, this had taken place. But the jury conceivably could have become confused by the testimony concerning it, in the light of the uncertain language of the instruction. The instruction does not limit recovery to the agreement sued on. It leaves the jury to return a verdict upon *any* agreement they think the evidence shows. It ignores preponderance.

But it is argued by the defendant in error that the deficiencies of this instruction may be supplied by reference to the instruction No. 2, given below, on behalf of the plaintiff. The general rule undoubtedly is that other instructions may be referred to for the purpose of clarification and supplement. But this is not so of a binding instruction. The cases holding that a hypothetical binding instruction for the plaintiff which ignores the defense of contributory negligence cannot be aided by others, are applicable here. Judge Maxwell has carefully collected these cases in *Adams* v. *Gasoline & Oil Co.*, 109 W. Va. 631, at page 641, 156 S. E. 63. The rule was not applied in that case, although recognized, because the instruction complained of contained language which strongly, if not entirely, negatived contributory negligence. A further careful consideration of the rule was made by Judge Hatcher in *Stafford* v. *C. & O. R. R. Co.*, 111 W. Va. 249, 251, 161 S. E. 447, when, after citing all the West Virginia cases, the rule was directly applied. Attention is particularly directed to *Evans* v. *Kirson*, 88 W. Va. 343, 106 S. E. 647, cited in both opinions referred to. Plaintiff's instruction No. 2 would, of course, not be justified for reasons herein fully set out.

Being of the opinion that the record contains error prejudicial to the plaintiff in error, the judgment below is reversed, the verdict set aside, and the cause remanded.