BLANCHE F. DORSEY *v.* THE PRUDENTIAL INSURANCE COMPANY OF AMERICA

(No. 9220)

Submitted February 3, 1942. Decided March 3, 1942.

*Hunter & Price,* for plaintiff in error.

*Kermit R. Mason* and *Ezra E. Hamstead,* for defendant in error.

LOVINS, JUDGE:

This is an action in assumpsit by the beneficiary of a life insurance policy for the recovery of the "accidental death benefit" as provided therein, payable upon receipt of due proof that death of insured occurred "as a result directly and independently of all·other causes, of bodily injuries, effected solely through external, violent and accidental means * * *". The face amount of the policy had

been paid to plaintiff, prior to the institution of the action. The issues of fact were submitted to a jury, resulting in a verdict in favor of the plaintiff. The Circuit Court of Monongalia County overruled defendant's motion to set the verdict aside and entered judgment on the verdict, and to this action of the trial court, this writ of error and supersedeas is prosecuted.

The insured, Charles B. Dorsey, husband of plaintiff, was store manager for the Booth Supply Company's store located at the Riverseam Coal Company mine at Booth, West Virginia. On the 12th of September, 1939, he became ill while at work and was brought to his home in Morgantown, arriving there about two o'clock in the afternoon. A physician was called, who diagnosed Dorsey's condition as a ruptured duodenal ulcer, and a surgical operation was performed about four o'clock that same afternoon. The ruptured ulcer was found, as well as generalized peritonitis, due to the pouring of the intestinal contents into the abdomen. The rupture was closed and the abdomen drained. Dorsey died six days later.

Plaintiff's evidence in chief bearing on the events surrounding insured's death consisted of the testimony of the two doctors who operated on insured and who treated him, the testimony of plaintiff, limited to what transpired after insured was brought home, and a certified photostatic copy of the certificate of insured's death, as filed with the state department of vital statistics.

The Medical portion of the certificate, prepared and signed by Dr. C. T. Thompson, who was insured's attending physician, contains the following:

> "22. * * * The principal cause of death and related causes of importance in order of onset were as follows: Ruptured Duodenal Ulcer and Generalized Peritonitis Sept. 12, 1939. Contributory causes * * *: Said to have ruptured while lifting. * * *
>
> "23. If death was due to external causes fill in also the following: Accident * * *. Lifting Boxes when ulcer ruptured. * * * Accident at store where he worked. * * * Manner of injury: Lifting boxes when ulcer ruptured.

"24. Was disease or injury in any way related to occupation of deceased? Possibly. If so, specify: Lifting immediate cause?"

From Dr. Thompson's testimony, it appears that he first saw insured on September 12, 1939, at insured's home, when he was called there about two o'clock in the afternoon and that he did not secure a history from insured as to the cause of his condition. Dr. Thompson stated that the certificate was made out with regard to the history and the physical findings at the time of the operation, and that from the appearance of the perforation, he is of the opinion that it was caused through stress or strain, not from natural causes. Dr. W. H. Howell, who assisted with the operation, testified that the perforation was of the type that "comes on" during exertion. The record contains an avowal of Betty Frum, a domestic in insured's home, after objection of defendant had been sustained, that when insured was brought there from the store on September 12, 1939, he was deathly pale, was bent over holding his stomach, and "the first thing he said was, get the doctor, and then he said he had hurt himself from lifting boxes." Otherwise there is nothing in the record offered by plaintiff to show what specific act or conduct of insured preceded the rupture of the duodenum or when such rupture occurred. Certain lay witnesses testified that Dorsey appeared to be in good health on the morning of his attack, about 6:15 and 8:00, and also on the preceding day. During the course of defendant's evidence, the following facts were shown, relating to what occurred in the store while insured was there on September 12, 1939. Two girls worked in the store with Dorsey, one of whom testified that shortly before noon he came from the general direction of his office to the front part of the store and lay down on a counter apparently in great pain. Maurice Kinsell went to the store about 12:15 and found Dorsey drinking buttermilk, after which he lay down on the counter. A. C. Barthlow arrived at the store about seven o'clock in the morning and saw Dorsey take a spoonful of a liquid, which had the appearance of milk of magnesia, with a glass of

water, put his hands on his stomach and shake his head, and then sit down at his desk. Barthlow then left, returning to the store shortly before Kinsell arrived and finding insured lying on the counter; shortly after seeing him drink a glass of buttermilk and eat a pickle sandwich, Barthlow stated that Dorsey vomited in the back of the store room, and that about one-thirty he took "some more medicine", different from that he had taken earlier in the day. About fifteen minutes later, Barthlow started to Morgantown with Dorsey in his automobile, stopping twice en route for Dorsey to get out of the car, on one occasion when he "gagged like he was trying to vomit."

In this case, the burden was upon plaintiff to establish a *prima facie* case of death by accident, as defined in the policy. *Lambert* v. *Ins. Co.*, 123 W. Va. 547, 17 S. E. 2d 628; *Martin* v. *Ins. Co.*, 106 W. Va. 533, 146 S. E. 53. Under recent decisions of this Court, where proof of death by accidental means must be shown in an action on an insurance policy, it is not sufficient that the result of an act on the part of insured was accidental in the sense that it was not intended, but it must appear that an unforeseen, unexpected or unusual event preceded such result. *Mitchell* v. *Ins. Co.*, 124 W. Va. 20, 18 S. E. 2d 803, (decided February 17, 1942,) ; *Otey* v. *Ins. Co.*, 120 W. Va. 434, 199 S. E. 596. We have held recently that the means may be determined as unforeseen, unexpected or unusual by the jury through an inference drawn from established facts and circumstances surrounding the injury and death of the insured. *Mitchell* v. *Ins. Co.*, *supra.*

The plaintiff herein endeavored to prove that "lifting" or "lifting boxes" caused the perforation of an ulcer in insured's duodenum which ultimately resulted in his death. This appears from the certificate of insured's death and the testimony of the witness Frum, referred to hereinbefore. Chapter 32, Acts 1939, provides, "* * * such copy of the record of death, * * * when properly certified by the state registrar, shall be prima facie evidence, in all courts and places, of the facts therein stated." It is claimed that by the provisions of this statute, the certificate standing alone is sufficient to support a verdict for

plaintiff. Looking at the certificate and the statute in the light most favorable to plaintiff, we find it difficult to see wherein it establishes the fact that insured suffered the ruptured duodenum by lifting or by lifting boxes. It is contradictory by its very terms. It must be kept in mind that the statute makes the certificate *prima facie* evidence of "facts" stated therein. The certificate says that the ulcer is "said to have ruptured by lifting". Is this not purely hearsay? Also, "lifting" could imply anything capable of being lifted. Then, note the last statement of the certificate: "Lifting immediate cause?" What does the question mark indicate other than that the writer thereof was doubtful because lifting was merely "said to have" caused the rupture. There are, of course, the two positive statements, "lifting boxes when ulcer ruptured" but these, we believe, only serve to confuse and make doubtful the entire meaning of the certificate as to the cause and manner of injury. Since the application of the statute is, by its terms, limited to "facts therein stated" we must hold that, because of the hearsay statement, doubtful meaning and conflicts therein on the point sought to be established thereby, the certificate is without probative force and therefore no *prima facie* evidence on such point was presented. To hold otherwise would be to give to the statute a strained and unintended interpretation.

The only manner, other than the certificate, by which plaintiff sought to show the cause of insured's rupture was the testimony of Betty Frum which was, we believe, correctly excluded from the jury's determination. If admissible, it would be so under the *res gestae* doctrine and the rule stated in *Collins* v. *Equitable Life Ins. Co.*, 122 W. Va. 171, 8 S. E. 2d 825, 130 A. L. R. 287.

> "Where appearances indicate that one has suffered an injury, one's statement, if spontaneous and reasonably coincident with and explanatory of the occurrence, may be regarded as part of it and be competent evidence under the doctrine of *res gestae*."

In the *Collins* case, a statement by insured approximately one hour after an accident was held to be inadmissible. The evidence adduced by the plaintiff does not fix the time, even approximately, on September 12th, when the rupture of the duodenum occurred. In view of this uncertainty we can not say that the statement of insured to Betty Frum is admissible in evidence as a part of the *res gestae*. Furthermore, even if this testimony had been competent, and if the death certificate had clearly stated the cause of the perforation as "lifting" or "lifting boxes", we would be constrained to hold that there was no basis for even an inference to be drawn by the jury that the death of Dorsey was caused by accidental means and that, as a matter of law on the record thus presented, no recovery was warranted. *Otey* v. *Ins. Co., supra; Mitchell* v. *Ins. Co., supra.* The absence of proof of a fact essential to support a recovery requires that the verdict of the jury be set aside. *Closterman* v. *Lubin,* 113 W. Va. 353, 167 S. E. 871.

For the reasons stated herein we deem it unnecessary to discuss other assignments of error. We therefore reverse the judgment of the trial court, set aside the verdict of the jury, and grant the defendant a new trial.

> *Judgment reversed; verdict set aside; new trial awarded.*