ARMOUR FERTILIZER WORKS *v.* EUPHA FINNELL

(No. 6925)

Submitted April 21, 1931. Decided April 28, 1931.

*John E. Jenkins, Wilbert H. Norton,* and *A. F. Rackberry,* for plaintiff in error.

*O. J. Deegan* and *Connor Hall,* for defendant in error.

LIVELY, JUDGE:

In an action of assumpsit, instituted by Armour Fertilizer Works against Eupha Finnell to recover $3,500 due on promissory notes, plaintiff attached sixty-three shares of stock appearing in debtor's name on the books of Ridge Land Company; and Mary Finnell, daughter of debtor, filed an intervening petition, claiming to be the owner by purchase of the stock. Depositions taken without the state were read to the jury which rendered its verdict in favor of petitioner, and Armour Fertilizer Works prosecutes this writ.

Eupha Finnell, mother and guardian of Mary Finnell, was operating a farm in Florida and was experiencing difficulty in financing the harvesting and marketing of her crop and in meeting the purchase price payments on her farm. According to R. W. Ware, an attorney of Sanford, Florida, in the spring of 1929, Eupha Finnell sought his advice on securing money, and at the time she owned a certificate of 26 shares of Ridge Land Company stock, pledged to the First Huntington National Bank to secure a debt of approximately $800, and two certificates of 37 shares of the same company's stock, pledged to the First National Bank of Sanford, with other securities, to secure a debt of $5,000. As guardian of Mary Finnell, who became of age in 1928, Eupha Finnell had received $2,700, representing an inheritance from the estate of Mary Finnell's grandfather for which she had made no settlement with her daughter. Upon advice of attorney Ware, Mary Finnell claims to have purchased the 26 shares of stock on June 1, 1929, paying therefor about $1,734.00 in cash and assuming the $800.00 loan at the Huntington Bank, of which loan she has paid $200; and on June 3, 1929, she purchased the 37 shares for about $764, receiving two bills of sale therefor executed by Eupha Finnell, and using in payment therefor $2,500 of the inheritance money. It is to be noted, however, that Mary Finnell stated that she paid for the stock *in cash* at different times before June 1, 1929, but does not remember the exact dates of payment, and she was unable to recall many other details of the transaction. In addition to the stock, Mary admits to have purchased

from her mother, payment being made out of the inheritance money, a one-half interest in farm equipment valued by Eupha Finnell at $2,300, for which Mary had paid at intervals prior to June 1, 1929, and a lot in the city of Huntington, West Virginia, the deed for which, dated April 24, 1929, recites the consideration as $2,500 and other considerations and conveys the land subject to a deed of trust. Mary at first denied having purchased the Huntington land and remembered nothing about it; but later admitted that she paid $2,500 for it in April, 1929. Eupha Finnell at first claimed that Mary paid her $2,500 in cash for the land; but later changed her statement and admitted that she was indebted to Mary for the money received by her as guardian and that she used this money for the payment of the lot. The testimony of each Eupha Finnell and Mary Finnell is in several instances inconsistent and contradictory.

The sole issue related to the title of the 63 shares of stock, and the jury found that Mary Finnell owned them. Does the evidence support the verdict? With the inheritance as the only source of income prior to June 1, 1920, out of which Mary Finnell could have paid for the stock, and with the admissions of 'her and her mother that $2,500 of the inheritance had been used in April prior to the transfer of the stock for payment of the Huntington land, it is inexplicable how the jury could have reached a conclusion that Mary had paid $2,500 in cash for the stock transferred. Counsel for petitioner contends that the conveyance of the Huntington property is ''an ex parte conveyance )of valueless equity.'' A preponderance of the testimony does not warrant the statement. Moreover, while the deed of April 24, 1929, makes reference to a trust deed, there is no mention therein or elsewhere in the record to indicate the amount of the lien, the value of the property, or the value of the equity. Since, under the evidence, mathematical certainty precludes the possibility of Mary Finnell's having paid the amount she claims to have paid, the verdict must fail because the evidence does not warrant it. While the appellate court is reluctant to disturb the finding of a jury, where the verdict of a jury is without evidence to support it, or plainly against the decided weight

and preponderance of conflicting evidence, it should, on proper motion, be set aside and a new trial awarded. *Cannady* v. *Chestonia*, 106 W. Va. 254.

It is to be noted that the jury concluded that the entire stock attached—63 shares—was the property of Mary Finnell. The writer is of the opinion that the verdict is erroneous in that it extends petitioner's right to all of the stock. Clearly, under the testimony, there was no money available from the inheritance with which Mary Finnell could have paid her mother $2,500 for the stock; and if there was no consideration for the transfer it is void as to existing creditors, and the stock is subject to attachment in the instant case. This condition exists as to the 37 shares held by the Sanford Bank. In the case of the 26 shares, however, in addition to the alleged payment out of the inheritance, the bill of sale provided that Mary Finnell *assumed* the payment of the $800 obligation at the Huntington bank, of which amount she (Mary) has paid $200. Whether she paid that sum out of $1,500 inheritance money paid to her after June, 1929, or from another source does not appear. Suffice it to say that it was not paid out of the $2,700. Clearly, then, it would seem that there was a valuable consideration for the transfer of the 26 shares on June 1, 1929; and whether or not the consideration be adequate has been held not to be a concern of this Court, unless there be preponderating evidence of a plan to defraud Eupha Finnell's creditors. See *Janes* v. *Felton*, 99 W. Va. 407. Since the case must be remanded for a new trial, these observations are merely suggested for consideration in the court below and are not to be considered as a part of the decision on the issue before the court at this time.

Counsel for the Fertilizer Works objected to the admission of evidence which showed that petitioner's brother had received a sum of money as his inheritance from the grandfather's estate. Since it is not shown what connection it has with the issue in the proceeding, it finds no proper place in the record; but being irrelevant, the error may be treated as harmless.

The judgment of the lower court is reversed, verdict set aside, and the case remanded for a new trial.

*Reversed; verdict set aside; new trial awarded.*