E. H. O'FLAHERTY

*v.*

MICHAEL TARROU, *et al.*

(No. 9901)

Submitted April 23, 1947. Decided June 24, 1947.

*Steptoe & Johnson, Stanley C. Morris* and *Wilson Anderson,* for plaintiff in error.

*Kay, Casto & Amos, John E. Amos* and *Vincent V. Chaney,* for defendants in error.

RILEY, JUDGE:

E. H. O'Flaherty instituted in the Circuit Court of Kanawha County this action of trespass on the case against

Michael B. Tarrou, doing business as M. & L. Lunch, and Peter Joseph, doing business as Strand Billiards, to recover damages for alleged injuries sustained when he slipped and fell on the floor of the premises occupied by defendants. On the ground that at the time plaintiff was injured, the portion of the premises occupied by defendant, Peter Joseph, was closed, the trial court directed the jury to return a verdict in favor of defendant, Peter Joseph. This writ of error is prosecuted by the defendant, Michael B. Tarrou, to a judgment, based upon a jury verdict, against him in the amount of ten thousand dollars.

The defendants occupied a street-level room, approximately one hundred twenty feet long, in a building located at 207 Hale Street, in the City of Charleston. At a distance of approximately fifty feet back from the street entrance, a partition, the upper fourth of which is of lattice construction, extending from wall to wall, divides this room into a front and back section, which sections, in turn, are connected by a large archway, the top of which joins the lattice construction. Toilets and storage facilities are located at the rear of the room. In the left two-thirds of the front section, as one enters from Hale Street, defendant Tarrou conducts a lunch counter and booths, the remaining third being occupied by Joseph for cigar counter. Joseph also operated pool and billiard tables in the section to the rear of the archway. Patrons of both defendants used the toilets and washrooms at the rear of the pool tables.

The front part of the room was well lighted with flourescent lighting fixtures, while the rear portion, when open, was lighted by ceiling lights and special lights over the pool tables. Just inside the pool room at the right of and near the top of the archway there was an electric light socket equipped with an unshaded 60-watt bulb, referred to in the record as the "night light."

On Sunday, December 9, 1945, defendant Joseph's cigar counter and pool and billiard business were closed, and the business of the defendant Tarrou did not open until

four o'clock in the afternoon, at which time the pool room had been swept and mopped, but not oiled. Between six-thirty and seven o'clock of that evening, plaintiff, as he was accustomed to do, entered defendant's place of business, passed through the front part of the room and through the archway with the intention of going to the toilet and washroom located at the rear. About half way between the archway and toilet, while passing down an aisle between the pool tables, plaintiff stepped in a foreign substance identified in the record as human vomit, and fell to the floor thereby sustaining a broken hip. As a result of his injury, plaintiff has incurred indebtedness for hospital, medical and other services amounting to $443.32, and there is substantial evidence to the effect that he will be incapacitated to carry on his trade as a barber for about one year, which, on the basis of earnings at forty dollars a week, would amount to $2,080.00. He testified that on occasions he still suffers pain. His physician, Dr. Miyawaka, testified that the injury suffered by plaintiff was one which normally would cause severe pain, and that plaintiff might expect to continue to experience pain for a long period of time, and, in addition, Dr. Miyawaka testified that in his opinion there will be some future physical impairment, and that even if the fracture properly heals, there will probably be continued pain and discomfort. This physician further testified that "in any broken bone, particularly near a joint, and particularly in a man of his age, you would get some arthritic changes about that bone and there is some residual stiffness and pain that practically always occurs."

The gravamen of plaintiff's cause of action, as disclosed by the declaration, was the alleged negligence and carelessness of defendants in permitting the floor of the pool room to become dirty and covered with a slick foreign substance, making passage over the floor extremely dangerous and hazardous, and the negligence and carelessness of defendants in failing to keep the part of the premises between the archway and the toilet and washroom well

lighted "so that patrons passing thereover could see to avoid any obstacles, obstructions or foreign substances blocking the said passage, or making travel thereover dangerous."

The evidence clearly shows that plaintiff was injured by a fall, caused by slipping on the foreign substance on the floor of the pool room and, except for the uncontradicted evidence that the floor had been mopped about four o'clock in the afternoon, there was no evidence which would indicate how and when the foreign substance got on the floor, and likewise there is no evidence that defendant Tarrou or any of his agents or servants had any knowledge of the presence of the foreign substance or should have had such knowledge.

But there is a clear conflict in the evidence on the question as to whether the pool room was sufficiently lighted at the time plaintiff was passing through. Plaintiff testified that the pool room was dark, and that he had passed through the pool room under similar conditions and on many previous occasions in order to use the toilet and washroom. One William J. Dryden, a witness for plaintiff, testified that he was in defendants' establishment on the day plaintiff was injured, and upon going back to the washroom, he saw plaintiff sitting on a stool between the pool tables. In answer to the query on direct examination as to whether there were any lights on in the pool room at that time, the witness answered that "I don't think there was, I am not sure." This witness testified that prior to plaintiff's injury, he went back to the toilet and noticed that the pool room "was not light and it was not real dark." This witness further testified that someone had warned him before he went back to watch for something on the floor, which he did and noticed "where somebody had vomited." On the other hand, defendant Tarrou and his witnesses contradict plaintiff as to the lighting conditions of the pool room. Mrs. Macy, a cook at the M. & L. Lunch counter testified that there was a 60-watt light above the archway which was customarily kept on after

dark on Sundays, when the cigar counter and billiard parlor were not operated, and that she was working on the day plaintiff was injured and noticed on going to the women's toilet in the rear that the light was burning. Plaintiff's witness, William B. Patrick, upon being recalled, testified that when the night light was on it was possible for one wishing to go to either the men's or women's toilet to see the way. Another witness for defendant, John Slate, testified that on the afternoon that plaintiff was injured, sometime between four and four-thirty o'clock, he had swept and mopped the floor of the pool room, and at that time there was no vomit on the floor. He further testified that the night light burns all the time, and was burning at the time he finished work on that Sunday afternoon. The light, according to this witness, has no shade and is of 60 watts. The defendant Tarrou testified that he was not at the premises at the time plaintiff fell, but arrived there shortly thereafter and saw plaintiff standing up holding himself on a table. He testified that the night light was burning, that it had no shade, that the walls were of a creamy color, and that the bulb gave sufficient light to enable a person to walk through the pool room without running into the tables and chairs, and was sufficient to enable customers to reach the toilet in the rear.

In view of the conflict in the evidence as to the lighting conditions in the room at the time plaintiff was injured, there is, in our opinion, sufficient evidence from which the jury could find that defendant was guilty of negligence in failing to keep the pool room properly lighted, so we do not think the trial court erred in refusing defendant's motion for a directed verdict made both at the conclusion of plaintiff's evidence and at the conclusion of all of the evidence. Here plaintiff was an invitee and the cardinal rule governing the responsibility of the owner of premises to his invitee is stated by this Court in *Spears* v. *Goldberg*, 122 W. Va. 514, pt. 2 syl., 11 S. E. 2d 532: "A person does not insure the safety of others whom he invites on his premises for business or other purposes, but he must be

prudent to render the premises reasonably safe for the visit." Of course, the mere presence of a foreign substance on the floor of the premises being traversed by the invitee does not of itself constitute actionable negligence. *Reynolds* v. *W. T. Grant Co.*, 117 W. Va. 615, 618, 186 S. E. 603; *Rankin* v. *S. S. Kresge Co.*, 59 F. Supp. 613, 617. So we think that in view of the uncontradicted evidence tending to show that plaintiff was caused to fall on the foreign substance on the floor, which was caused to be there by some unknown person, for the presence of which defendant would not be responsible, coupled with the plain conflict of the evidence as to the lighting conditions at the time plaintiff was injured, renders the case one for jury determination.

Several grounds of error are assigned. Under the first, second and third grounds of error, defendant cites the refusal of the trial court to permit him to introduce evidence relating to the absence of accidents or injuries over a period of years at the place and in the circumstances that plaintiff was injured. The fourth ground of error, to the effect that the trial court erred in failing to direct a verdict for defendant, has heretofore been disposed of. Error is assigned to the giving of instruction No. 1 for plaintiff. This instruction told the jury that it could take into consideration future losses which plaintiff might suffer as the result of his injuries. Error is also assigned to the refusal to give defendant's instructions Nos. 2, 3, 6, 8, 9, and 10 and in the amendment of defendant's instruction No. 10.

And, finally, defendant contends that the verdict is excessive.

There is no merit in the position that the court erred in refusing to admit proffered evidence. This record discloses an unusual situation on the premises, without any evidence that such condition existed prior to the date of plaintiff's injury. It follows that any evidence relating to the absence of accidents and injuries over a period of years at the place and in the circumstances plaintiff was injured would not be pertinent to the matters in issue here.

The alleged error in the giving of plaintiff's instruction No. 1 cannot be raised here because at the trial defendant raised no specific objection to this instruction, as required by Rule VI(e), Rules of Practice and Procedure for Trial Courts in West Virginia, 116 W. Va. lxiii. See also *Hale v. McGinley*, 119 W. Va. 565, 195 S. E. 201; *Saunders v. McCown*, 120 W. Va. 294, 198 S. E. 520; *Horchler v. Van Zandt*, 120 W. Va. 452, 199 S. E. 65.

Defendants instruction No. 2 was properly refused because the substance of this instruction is fully covered by defendant's instructions Nos. 5 and 7. Defendant's instruction No. 6 is abstract and the court's refusal to give it was not prejudicial error, under *Elswick v. Charleston Transit Co.*, 128 W. Va. 241, 36 S. E. 2d 419; *Browning v. Monongahela Transportation Co.*, 126 W. Va. 195, 204, 27 S. E. 2d 481.

Defendant's instruction No. 8 was properly refused, because it was drafted on the theory that recovery is sought on the basis that an unknown third party placed a foreign substance on the floor of defendant's premises, and the instruction ignores the actual theory of recovery, namely, that the pool room was not properly lighted and plaintiff therefore could not see the foreign substance on the floor as he proceeded back to the toilet and washroom.

Defendant's instruction No. 9 presented to the jury the theory of plaintiff's contributory negligence. For the reason that there is no evidence in this case which would justify the jury in finding that plaintiff was guilty of contributory negligence, the instruction was properly refused.

Defendant's instruction No. 10, being incomplete, was properly refused, and instruction No. 10, as amended, which contains an hypothesis fully supported by the record, was properly given.

And, finally, we do not regard the verdict as excessive. As heretofore noted, defendant sustained monetary damages in the amount of $2,523.32, and there is sufficient evi-

dence in this case from which a jury could find that plaintiff has suffered permanent injuries.

Perceiving no error in the conduct of the trial and the court's rulings therein, we are of opinion to affirm the judgment complained of.

*Affirmed.*

Fox, PRESIDENT, dissenting:

I dissent from the ruling of the majority, on the ground that, in my opinion, the verdict of ten thousand dollars in favor of plaintiff was and is excessive. Its effect is to compensate plaintiff in the sum of seventy-five hundred dollars for a broken hip, which, at the date of the trial, had satisfactorily healed and united. I agree that it was entirely proper for the jury to find that the effects of the injury suffered by plaintiff would continue, and that, in a sense, his injury was of a permanent nature; but from the evidence considered as a whole, it appears to me that the sum of seventy-five hundred dollars was not justified as based on any reasonably probable permanent disability the plaintiff would suffer from such injury. The monetary loss, including outlay for hospital and medical expenses and loss of wages, was approximately twenty-five hundred dollars, and this being true the balance of the verdict must be attributed to what the jury thought should be allowed for probable or possible disability accruing after the expiration of the period when plaintiff might have returned to his usual employment.

I do not question the statement made in point 6 of the syllabus that "In an action for personal injuries a verdict of a jury will not be disturbed solely on the ground of excessive damages, except where it plainly appears to have resulted from mistake, partiality, passion, prejudice, or a lack of due consideration"; but I am of opinion that the verdict in this case plainly indicates either mistake, partiality, passion, prejudice or a lack of due consideration of the evidence bearing on the reasonably probable consequences of plaintiff's injury.

We do nothing, when we merely pay obeisance to principles, such as that announced by this Court in the language quoted above, and then fail to apply them to the facts presented in a particular case. It is a rare occasion when the fact of either mistake, partiality, passion, or prejudice can be established by direct evidence; we can only infer the existence of either thereof from the amount of the verdict, and the evidence upon which it is based. Here, I think that we may reasonably infer that the jury was influenced by mistake, partiality, passion, or prejudice, because the evidence does not, in my opinion, furnish any reasonable basis for the verdict returned. The jury would have been justified, under all the facts and circumstances of the case, in returning a verdict for plaintiff in a substantial sum; but not the excessive sum of ten thousand dollars.

The death of plaintiff below since the verdict and judgment in the trial court, and since the issuance of the writ of error in this Court has been suggested on the record, and I am assuming that if a new trial were granted the case could be revived and prosecuted to judgment under the provisions of Code, 56-8-2, and that upon any new trial the testimony of the deceased plaintiff taken on the former trial could be read to the jury.

I would reverse the judgment of the circuit court, set aside the verdict, and award defendant a new trial.

I am authorized to state that Judge Haymond concurs in this dissent.