G. L. FERGUSON, *Administrator*

*v.*

B. D. PINSON

(No. 9987)

Submitted September 14, 1948. Decided November 16, 1948.

692

*Okey P. Keadle,* for plaintiff in error.

*Jess Hammock, M. J. Ferguson,* and *Philip A. Baer,* for defendant in error.

HAYMOND, JUDGE:

Sometime before noon on June 6, 1945, Russell Ferguson, a young unmarried man twenty four years of age, while engaged in placing a machine for use in drilling a well for water on land occupied by Lowell Sellards in Wayne County, was instantly killed by an electric shock when a part of the metallic equipment with which he was working came in contact with a high tension wire suspended above the location of the machine. The plaintiff, G. L. Ferguson, the father of the deceased, as administrator of his estate, instituted this action of trespass on the case in the Circuit Court of Wayne County to recover from B. D. Pinson, Don Pinson and Mack Pinson damages for the wrongful death of Russell Ferguson which the plaintiff charges was caused by their negligence.

The writ was issued against B. D. Pinson, Don Pinson and Mack Pinson, as defendants. Don Pinson and Mack Pinson are nonresidents of the State and process in the action, though served upon B. D. Pinson, was never executed as to them. The declaration impleaded only B. D. Pinson as defendant and the case was tried against him

alone. The trial resulted in a verdict for the plaintiff against the defendant, B. D. Pinson, for $2,500.00. Motions by him for a directed verdict in his favor were overruled. After the verdict of the jury was returned a motion to set it aside and grant him a new trial was also overruled and judgment was rendered upon the verdict. To that judgment the defendant obtained a writ of error from this Court.

It should be observed that the declaration, which was not challenged by demurrer, contained the allegation that the defendant, though subject to the provisions of the Workmen's Compensation Law of this State, was not a subscriber to the fund and had not paid the premiums as required by the statute and that he was not entitled to the protection, but was subject to the penalties, provided by the statute.

An allegation of that nature is, of course, necessary to render the declaration good on demurrer. *Gunnoe v. Glogora Coal Co.,* 93 W. Va. 636, 117 S. E. 484; *Byrd, Admr.* v. *Sabine Collieries Corporation,* 92 W. Va. 347, 114 S. E. 679; *Louis* v. *Smith-McCormick Construction Co.,* 80 W. Va. 159, 92 S. E. 249. From the holdings of this Court in those cases that such allegation is essential to a good declaration in an action by an employee against an employer, it necessarily follows that the burden of proving the matters alleged rests upon the plaintiff. See also 71 C. J. 1503. No evidence, however, to support or refute that charge in the declaration was offered by either party at the trial of the case. If that question had been properly raised in the trial court it would have been its duty to direct a verdict for the defendant because of the failure of the plaintiff to establish an essential element of his case. By its terms the Workmen's Compensation Law applies to all regular employers in industry and business and to all their employees except employers and employees expressly excluded from its scope and operation. Code, 1931, 23-2-1, as amended by Chapter 131, Article 2, Section 1, Acts of the Legislature, 1945, Regular Session. In every case in which an employee or his personal representative sues his employer for dam-

ages for personal injury or wrongful death the presumption which arises of the applicability of the statute prevails until the contrary is shown by allegation and proof or it appears, in like manner, that the employer has not complied with or is not subject to the statute or that the employee is prohibited by law from engaging in his employment or is otherwise excluded by the provisions of the act. *Irvine* v. *Union Tanning Company,* 97 W. Va. 388, 125 S. E. 110; *Mangus* v. *Proctor-Eagle Coal Company,* 87 W. Va. 718, 105 S. E. 909. No evidence whatsoever to rebut the presumption or to establish any of the foregoing exceptions exists anywhere in the record in this case.

Upon the trial no issue was presented as to the applicability of the Workmen's Compensation Law to the case or its effect upon the rights or the duties of either of the parties. The trial was conducted by both the plaintiff and the defendant without regard for the statute or the existence or the application of any of its provisions. With the exception of the unsupported allegation of the declaration already referred to, they proceeded in the case as if it were a common law action wholly unaffected by any provision of the statute. This attitude of the parties in completely disregarding that legislative enactment has continued in this Court. No issue concerning it is raised by assignment of error, bill of exceptions, or briefs filed by counsel for either party upon the submission of the case. For these reasons the question of the applicability of the statute, not being jurisdictional in character, will not be considered or reviewed on this writ of error. See *Elswick* v. *Charleston Transit Company,* 128 W. Va. 241, 36 S. E. 2d 419; *Stephenson* v. *Kuntz,* 131 W. Va. 599, 49 S. E. 2d 235. Even though matter should arise upon a specific exception noted in the record in an action at law it need not be noticed or reviewed by this Court unless such exception is specifically pointed out in assignments of error or brief of counsel or is otherwise specifically brought to the attention of the Court. Code, 1931, 56-6-37.

The plaintiff prosecutes this action on the theory that at the time Russell Ferguson sustained the injury which

resulted in his death the relation of master and servant existed between the defendant and Russell Ferguson and that his death was caused by the negligence of his employer in requiring him to assist in placing certain drilling equipment under two high tension electric wires and raising its steel mast between them and in failing to warn him of the danger and to instruct him sufficiently to enable him to perform his work in a reasonably safe manner.

The defendant bases his defense to the action on the following grounds: First, the relation of employer and employee did not exist between him and the decedent, Russell Ferguson, at the time he sustained the injury which resulted in his death; and second, even if that relation existed at that time, the defendant was not guilty of negligence and the death of Russell Ferguson was caused solely by his own disobedient and careless conduct and not by any negligence of the defendant.

These material facts appear in the evidence introduced in behalf of the plaintiff. The equipment used by Russell Ferguson at the time of his injury was owned by the defendant who had engaged in the business of drilling wells for many years and had operated the same equipment for that purpose. Young Ferguson had been an employee of the defendant in the same kind of work from March, 1945, until a short time before his death. Within a few days prior to the injury the defendant called at Ferguson's home on several occasions and took him by automobile to his work. Don Pinson, who testified that on and prior to June 6, 1945, he was the lessee from the defendant of the equipment owned by him, is the son of the defendant, and Mack Pinson, who was present and in charge of and directed the work of placing the equipment at the time of the accident, is a brother of the defendant. Don Pinson had previously worked for the defendant in his business of drilling wells, and Mack Pinson, who was an experienced driller, was employed by the defendant both before and after the accident in which Ferguson was killed. A written lease dated May 15, 1945, made by the defendant to Don Pinson for the equipment, for a period of sixty

days, recited a nominal consideration of one dollar and was never recorded, and no person, other than the defendant, his wife and Don Pinson, knew of its existence. The only checks produced by Don Pinson and used by him to pay wages and to purchase supplies for drilling wells with the equipment were issued after the injury to Ferguson and the income tax reports showing deductions made by Don Pinson from wages earned by Ferguson and paid to him were also dated and filed after June 6, 1945, the date of Ferguson's death. Don Pinson was at the home of the defendant when he learned by a telephone message that an accident had occurred in which Ferguson and Mack Pinson had been injured. Upon receipt of this word Don Pinson told the defendant that there had been an accident and he and the defendant then went by automobile to the place where the plaintiff was employed, reported the occurrence to him, and took him to the office of a doctor where they learned that Ferguson had been killed and that Mack Pinson had been injured. According to the plaintiff, while he was riding with Don Pinson and B. D. Pinson, the defendant by his conduct and conversation indicated to the plaintiff that Don Pinson worked for the defendant.

The evidence produced by the defendant is that though he owned the equipment, he had leased it to his son, Don Pinson, for a period of sixty days from May 15 to July 15, 1945; that he took no part in any drilling operations in which it was used during that period and had no interest in the work except as owner of the equipment; and that Don Pinson had control and supervision of the work in which the equipment was used, employed Ferguson and Mack Pinson to work for him, and paid them for their services. The written lease, which was introduced in evidence, was prepared by the wife of the defendant and signed by him and Don Pinson in her presence on May 15, 1945, the day of its date. A similar oral arrangement had been entered into between the defendant and his son during the summers of 1943 and 1944 to enable Don Pinson, who was studying for the ministry at a school in Saint Louis, to earn an income during his vacation to assist him

in continuing his studies. Before the lease was made the defendant, on May 9, 1945, terminated his employment of Russell Ferguson, who had previously worked for him, and paid him in full for his services to that date. The business records of the defendant which were kept by his wife and which were produced showed that he did no drilling during the period May 16 to July 16, 1945. After the lease was signed Don Pinson employed Ferguson and Mack Pinson to work for him and he paid them weekly in cash for their services except the wages earned by Ferguson for the unfinished week at the time of the injury which he paid later to the plaintiff by check. Following the execution of the lease Don Pinson negotiated drilling contracts with different persons including the contract to drill the well on the Sellards farm. He completed the well after the accident and Sellards paid him for drilling it. He made deductions of income taxes during the quarter April 1 to June 30, 1945, in which Ferguson worked for him from May 15 to June 6, 1945, from his wages and reported them to the United States Collector of Internal Revenue.

Don Pinson went with Ferguson and Mack Pinson, with whom Ferguson worked as his helper, when the equipment was transported to the Sellards farm on the morning of June 6, 1945, and supervised their work in setting up the drilling machine after Sellards, who was present, indicated the location at which he wanted them to drill the well. When the machine had been taken to that site, it was discovered that as located it was beneath two parallel high tension electric wires and that the steel mast of the machine when elevated to the required height would extend above and between them at a distance of about four or five feet from the nearer of the two wires. Those present at the time, Don Pinson, Mack Pinson, Russell Ferguson and Sellards, discussed the situation. Don Pinson told them that he thought it would be dangerous to raise the mast at that point because of the presence of the wires. Mack Pinson at first thought there was no danger and he and Ferguson argued with Don Pinson about continuing the work at that location. Don Pinson insisted that there

was danger, told them that the wires would kill them, that he would not take the risk, and that he wanted them to lower the mast at once and move from the location. Mack Pinson, as well as Ferguson, who chided Don Pinson about his cautiousness, indicated that if they did not drill the well at the point selected by Sellards he would not permit it to be drilled on his farm. Don Pinson then told them to move the equipment to the land of another man who wanted him to drill a well for him. After Mack Pinson and Ferguson consented to follow his directions, Don Pinson left the scene and went to meet his wife at the office of a doctor in Kenova. From that place he went to the home of the defendant where upon his arrival he received a telephone message that Mack Pinson and Ferguson had been injured.

Shortly after Don Pinson had left the Sellards farm Mack Pinson told Ferguson that they would get paid just as much for moving the machine as they would get for drilling the well and that they should "tear it down" and move to another place and Ferguson agreed to that suggestion. It seems that at that time the mast had been raised between the wires and was about two and one half or three and one half feet from one of them. Two large jacks were used to raise or lower the machine and to keep it in position. Exactly where the jacks were at this time does not clearly appear but it seems that they had been placed beneath the machine and were holding it and the mast in place. At this point Mack Pinson and Ferguson decided to lower the mast from between the wires and to move the machine from its location. Mack Pinson told Ferguson twice "not to fool with" the jacks. Before starting to take down the mast, Mack Pinson walked away from the machine and at that time Ferguson was working near the jacks. When he was last seen by a witness for the plaintiff almost immediately before he was injured, Ferguson was standing "right beside the jack", but the witness did not remember whether he had his hands on it. The jack was moved or operated, the mast was suddenly tilted against the wire, and electric current instantly

killed Ferguson and knocked Mack Pinson to the ground in an unconscious condition from which he did not recover for several minutes. No witness saw Ferguson move or work the jacks, but it is obvious that one of them was operated by him and that the mast came in contact with the wire as the result of his act. It is clear from the evidence that the jacks did not move automatically and that the position of the machine could not have been changed or disturbed in any other way or by anyone except Ferguson. The evidence that Ferguson knew the dangerous position of the mast and that he disregarded the injunction of Mack Pinson not to operate the jacks is not contradicted or rebutted by any facts or circumstances in the case.

The proof introduced in behalf of the defendant is not contradicted by any direct evidence offered by the plaintiff and the veracity of the witnesses produced by the defendant is not impeached by the testimony of any witness.

The burden was upon the plaintiff to prove the existence of the relation of master and servant between the defendant, B. D. Pinson, and Russell Ferguson at the time of his fatal injury as alleged in the declaration. The test of the relation between a person who has work done and a person who does the work consists in the former's right or lack or right to supervise the work. If he has the right of supervision he is a master and the workman is his servant. *Greaser* v. *Appaline Oil Company,* 109 W. Va. 396, 155 S. E. 170; *Gunnoe* v. *West Virginia Poultry Co-Operative Association,* 115 W. Va. 87, 174 S. E. 691; *Craft* v. *The Pocahontas Corporation,* 118 W. Va. 380, 190 S. E. 687. The proof offered by the plaintiff to show that Russell Ferguson was the servant or the employee of the defendant, B. D. Pinson, indicates only a mere probability or likelihood that the relation existed at the time of the injury. There is no direct or positive evidence that Russell Ferguson was working for the defendant, B. D. Pinson, or that the defendant, B. D. Pinson, had any supervision or control of the work in which Ferguson was engaged when he was injured or for several days before that unhappy oc-

currence. On the contrary the only direct and unequivocal evidence in the case is that Ferguson was employed by Don Pinson who hired him, paid him his wages, and had the right to supervise and control his work. When he was injured Ferguson was assisting Mack Pinson who, according to the uncontradicted evidence, was also the employee of Don Pinson, and both of them at the time were engaged in his employment.

The verdict in favor of the plaintiff necessarily found that Ferguson was the servant of the defendant B. D. Pinson. The evidence was not sufficient to support that finding and the verdict should have been set aside for that reason. A verdict of a jury which is wholly without evidence on a point which is essential to a finding or which is based on evidence plainly insufficient to warrant such finding, will be set aside and a new trial will be awarded. *Closterman* v. *Lubin,* 113 W. Va. 353, 167 S. E. 871; *Armour Fertilizer Works* v. *Finnell,* 110 W. Va. 416, 158 S. E. 510; *Cannady* v. *Chestonia,* 106 W. Va. 254, 145 S. E. 390; *Maguet* v. *Frantz,* 95 W. Va. 727, 124 S. E. 117, 37 A. L. R. 1450. Because of the insufficiency of the evidence to establish the relation of master and servant between the defendant, B. D. Pinson, and Russell Ferguson at the time of his injury the judgment must be reversed, the verdict set aside, and the case remanded for a new trial.

As the case may be tried again it is pertinent to state that even if the decedent had been the servant of the defendant, B. D. Pinson, when he was working at the machine, under the evidence produced at the trial the plaintiff is not entitled to a recovery. The evidence in the case fails to establish negligence which was the proximate cause of the injury sustained by Russell Ferguson. After the dangerous location of the equipment in proximity to the wires was discovered and discussed, precautions were taken by Mack Pinson to lower the mast and remove the equipment in safety, as ordered by Don Pinson and as agreed to by both Mack Pinson and Ferguson who, as Mack Pinson's helper, was subject to his orders. With full knowledge of the danger, and in express violation of his

instructions not to do so, Ferguson moved or operated one of the jacks and, in so acting, caused the mast to lurch or tilt against the wire and come in contact with the carrier of the electric current which instantly killed him. The evidence tends to show that if young Ferguson had not engaged in his careless and imprudent conduct the mast would have been lowered and the machine removed in safety and that he would not have sustained the injury which resulted in his death.

An employer within the terms of the Workmen's Compensation Law who fails to avail himself of its protection is not liable for injury or death of an employee occurring in the course of his employment, in the absence of negligence of the employer or his agents which is the proximate cause of injury or death. Code, 1931, 23-2-8, as amended by Section 8, Article 2, Chapter 131, Acts of the Legislature, 1945, Regular Session; *Powell* v. *Mitchell,* 120 W. Va. 9, 196 S. E. 153; *Thorn* v. *Addison Brothers & Smith,* 119 W. Va. 479, 194 S. E. 771; *Laas* v. *Lubic,* 105 W. Va. 513, 144 S. E. 225; *Laas* v. *Lubic,* 101 W. Va. 546, 133 S. E. 142; *Estep* v. *Price,* 93 W. Va. 81, 115 S. E. 861; *Zinn* v. *Cabot,* 88 W. Va. 118, 106 S. E. 427; *Miller* v. *United Fuel Gas Company,* 88 W. Va. 82, 106 S. E. 419; *Wilkin* v. *Koppers Company,* 84 W. Va. 460, 100 S. E. 300; *Louis* v. *Smith-McCormick Construction Company,* 80 W. Va. 159, 92 S. E. 249. Likewise there can be no recovery by or in behalf of an employee whose injury or death is caused wholly by his own negligence. *Watts* v. *Ohio Valley Electric Railway Company,* 78 W. Va. 144, 88 S. E. 659.

The judgment is reversed, the verdict is set aside and the case is remanded for a new trial which is awarded the defendant.

> *Judgment reversed;*
> *verdict set aside;*
> *new trial awarded.*