S. P. Puffer

*v.*

The Hub Cigar Store, Inc.
(No. 10676)

Submitted September 7, 1954. Decided October 26, 1954.

328

*J. B. Fisher* and *Donald L. Schaffer,* for plaintiff in error.

*Poffenbarger & Bowles* and *L. F. Poffenbarger,* for defendant in error.

HAYMOND, JUDGE:

In this action of trespass on the case instituted in the Court of Common Pleas of Kanawha County, West Virginia, on April 28, 1953, the plaintiff, S. P. Puffer, seeks to recover damages from the defendant, The Hub Cigar Store, Inc., for personal injuries alleged to have been

caused by the negligence of the defendant in failing to protect the plaintiff against injuries inflicted upon him by a third person, who at the time was noticeably intoxicated, while the plaintiff was present as an invitee of the defendant in its place of business at No. 917 Quarrier Street in the City of Charleston, on March 22, 1953.

The case was tried upon the declaration of the plaintiff and the plea of not guilty of the defendant. At the conclusion of the evidence introduced in behalf of the plaintiff and at the conclusion of all the evidence, the defendant made separate motions for a directed verdict in its favor. These motions were overruled. The jury returned a verdict in favor of the plaintiff for $12,500. The trial court overruled the motion of the defendant to set aside the verdict and grant it a new trial and, on September 3, 1953, entered judgment upon the verdict. The Circuit Court of Kanawha County, by judgment entered February 18, 1954, refused to grant the defendant a writ of error to the judgment of the court of common pleas; and to the judgment of the circuit court the defendant prosecutes this writ of error.

On and for some time prior to Sunday, March 22, 1953, the defendant operated a restaurant, poolroom, cigar, and soft drink business in a large room on the first floor of a building at No. 917 Quarrier Street in the City of Charleston. The front part of the room abutting on Quarrier Street contained plate glass windows on each side of the main entrance. Inside the room, to the right of the main entrance, was a cash register and a lunch counter and to the left of the main entrance, and opposite the lunch counter, was a cash register and a cigar counter. In the section of the room in the rear of these counters was a poolroom, the entrance to which was through swinging doors.

About twelve thirty o'clock in the afternoon of Sunday, March 22, 1953, the plaintiff who was then about seventy nine years of age and resided at a nearby hotel on Quarrier Street, entered the place of business of the defendant, of

which he had been a patron for several years, for the purpose of eating his lunch. He went to the lunch counter and ordered specially prepared food consisting of a dish of potato hash. He stood at the lunch counter at a distance of about eight feet from the main or street entrance to the room. When he entered the place of business of the defendant three of its employees, the manager, a man named Warden, a clerk, named Fisher, and a waitress, named Dent, were on duty, and a few other patrons were in the room. Warden was at or near the cash register located at the front end of the cigar counter, Fisher was in the front part of the room or at or near the cigar counter, and Miss Dent was operating the lunch counter where food was served and at which the plaintiff was standing.

While the plaintiff was waiting to receive the food which he had ordered he and an acquaintance named Laird, who was also standing at the lunch counter at a distance of about four feet from the plaintiff, observed an unknown man on the sidewalk in front of the room in a noticeably intoxicated condition who staggered and fell upon the sidewalk and against the plate glass windows at the front of the room. This man stayed on the sidewalk for about ten minutes and then entered the room where he remained for a few minutes. While in the room he staggered and stumbled and appeared to be unable to walk in a normal manner. The plaintiff testified that he observed the condition of the unknown man, and said to Fisher: "This is an ambulance case. You better get him out."; and that he also told Miss Dent: "You better protect yourself, because he is liable to break your window." According to the testimony of the plaintiff, Fisher then escorted the man from the room through the front entrance and while he was being so removed he walked and was not carried from the room.

After the intoxicated man went or was taken by Fisher out the front door he remained on the sidewalk for five or ten minutes and again entered the room. Upon his reentry he went to the lunch counter, between the plain-

tiff and Laird who were still standing at that counter, and asked Fisher for a cup of coffee. Fisher ignored the man's request. After the man had been in the room the second time for a period of approximately two to five minutes he fell to the floor at a point near and between the plaintiff and Laird who continued to stand at or near the lunch counter where the plaintiff was waiting to receive his order of food. When the man fell his head struck the counter, and while he was on the floor he grabbed one leg of the plaintiff at the ankle, and caused the plaintiff to fall to the floor. As a result of the fall, caused by the intoxicated person, the plaintiff's left hip was fractured and he sustained the injuries for which he seeks a recovery of damages from the defendant.

Within a few minutes after the plaintiff was injured the city police were summoned by Fisher and the intoxicated person was removed by them from the sidewalk in front of the room where he had gone after he caused the plaintiff to fall. The plaintiff was taken in an ambulance, which had been called by Curry, a patron, and the manager of the defendant accompanied the plaintiff from the defendant's place of business, to a Charleston hospital, where the plaintiff remained and was treated as a patient from March 22, 1953, until May 8, 1953, after which he was confined to his hotel room until May 29, 1953, when he apparently returned to his work as clerk of the Selective Service Draft Board in Charleston.

As a result of his injury the plaintiff incurred hospital bills amounting to $875.00, a doctor bill of $200.00, and loss of wages for a period of approximately ten weeks amounting to $700.00. At the time of the trial, which was held on August 4, 1953, the plaintiff could walk only with the aid of crutches, and his injuries caused him pain. While confined to the hospital the plaintiff was required to submit to a surgical operation in the treatment of the fracture of the neck of the femur or hip bone of his left leg, and a doctor who examined him expressed the opinion that the injury of the plaintiff was permanent and that he

would likely have a slight limp which would also be permanent.

Upon the trial the plaintiff and two witnesses in his behalf, Laird and Slack, and three witnesses in behalf of the defendant, Fisher, Curry and Dent, testified concerning the acts and the demeanor of the intoxicated person who caused the plaintiff to fall. These witnesses, including the plaintiff, testified that this man, whom none of them knew, was in a noticeable state of intoxication; that his condition was such that he could not control his acts or conduct; that he staggered or stumbled and fell and was unable to walk or talk normally; that he was not noisy or boisterous; and that he made no threats or threatening gestures. None of them regarded him as dangerous or likely to cause harm to any one. On that point the plaintiff gave this testimony: "Q. You didn't turn around to watch him as he came in? A. Oh, no, except that I couldn't fancy that he would injure me. Q. You didn't expect him to injure you? A. Why, of course not. I had told him it was an ambulance case and he ought to go out of there. Q. Now, you are speaking of what you told Fisher then? A. Yes, that's right. * * * Q. And I believe you have already stated that he didn't make any noise; he didn't holler at you or anybody else? A. No. He wasn't directing his stuff to me. Q. And you didn't expect him to bother you in any way, did you? A. Why, of course not. Why should I? The place was supposed to be protected." Concerning the demeanor of the intoxicated person the witness Laird gave this testimony: "Q. You did not then anticipate any danger from him, did you? A. No, not as far as I was concerned. Of course, I didn't know he was the man back of me. I could just feel somebody falling. Q. You mean when you first saw him the first time, he didn't look to you like he was dangerous, did he? A. As far as I was concerned, he wasn't dangerous to me. Q. Well, did he look dangerous to anybody? A. No. Of course, he looked like he couldn't take proper care of himself, as any drunk would be."

The only conflict in the evidence relates to the short absence of the intoxicated man from the room after he

first entered it and before the plaintiff was injured and the statement of the plaintiff that he told Fisher the man was "an ambulance case." The plaintiff testified that after the man entered the room the first time and had remained for two or three minutes Fisher escorted him from the room; that he offered no resistance; and that Fisher "simply put him out and wouldn't let him get up to the counter." Slack testified that "Fisher put him out the first time"; and that "he was then noticeably drunk" and "Out on his feet, stumbling." Fisher, however, stated that after the man came in the room the first time he went outside and that he, Fisher, did not take him "to the door" or "refuse to serve him." Fisher also stated that he did not hear the plaintiff say that the man was "an ambulance case" or that "he might hurt somebody." Warden, the manager of the defendant's place of business when the plaintiff was injured, having ceased to be an employee of the defendant and being absent from this State at the time of the trial, did not testify in the case.

No instructions were offered by the plaintiff, but the defendant submitted eight instructions, five of which were given and three of which, Nos. 1, 7 and 8, were refused by the trial court. Instruction No. 1 was a peremptory instruction which would have directed the jury to return a verdict in favor of the defendant; Instruction No. 7 related to the conduct of the intoxicated person as an intervening, independent cause of the injury sustained by the plaintiff; and Instruction No. 8 dealt with proximate cause.

The principal grounds assigned and relied upon by the defendant to reverse the judgment of the circuit court and the judgment of the court of common pleas are: (1) The defendant was not guilty of actionable negligence; (2) the plaintiff was guilty of negligence which was the proximate cause of his injuries; (3) the acts and the conduct of the intoxicated person were an intervening, independent cause of the injuries sustained by the plaintiff; (4) the verdict is excessive; and (5) instructions Nos. 1, 7 and 8, offered by the defendant and refused by the trial court, should have been given.

The evidence shows clearly that when the plaintiff entered the place of business of the defendant, and while he remained there, on Sunday, March 22, 1953, he was present for the purpose of purchasing his lunch. His visit was for a purpose connected with the business conducted by the defendant on the premises which it occupied and the status of the plaintiff was that of an invitee or business visitor. An invitation is implied when premises of an owner or an occupant are entered or used for a purpose which is beneficial to the owner or the occupant, or when the entry or the use is for the mutual benefit of the owner or the occupant and the entrant or the user of the premises. 65 C. J. S., Negligence, section 43 (3) b; *Smith* v. *Sunday Creek Company,* 74 W. Va. 606, 82 S. E. 608. A person is an invitee when for purposes connected with the business conducted on the premises he enters or uses a place of business. See 65 C. J. S., Negligence, section 44a; *Cooper* v. *Pritchard Motor Company,* 128 W. Va. 312, 36 S. E. 2d 405; *Ellguth* v. *Blackstone Hotel,* 408 Ill. 343, 97 N. E. 2d 290.

The owner or the occupant of premises used for business purposes is not an insurer of the safety of an invited person present on such premises and, if such owner or occupant is not guilty of negligence or willful or wanton misconduct and no nuisance exists, he is not liable for injuries there sustained by such invited person. See 65 C. J. S., Negligence, section 45; 38 Am. Jur., Negligence, section 92; *Gilmore* v. *Montgomery Ward and Company,* 133 W. Va. 342, 56 S. E. 2d 105; *O'Flaherty* v. *Tarrou,* 130 W. Va. 326, 43 S. E. 2d 392; *Cooper* v. *Pritchard Motor Company,* 128 W. Va. 312, 36 S. E. 2d 405; *Denton* v. *Third Avenue Theatre Company,* 126 W. Va. 607, 29 S E. 2d 353; *Spears* v. *Goldberg,* 122 W. Va. 514, 11 S. E. 2d 532, 12 S. E. 2d 513; *Hunker* v. *Warner Brothers Theatres,* 115 W. Va. 641, 177 S. E. 629; *Truschel* v. *The Rex Amusement Company,* 102 W. Va. 215, 136 S. E. 30; *Whitfield* v. *Cox,* 189 Va. 219, 52 S. E. 2d 72; *Relf* v. *Aetna Casualty and Surety Company* (La. App.), 1 So. 2d 345; *Van Brock* v. *The First National Bank in St. Louis,* 349 Mo. 425, 161 S. W. 2d 258; *Lindquist* v. *S. S. Kresge Company,* 345 Mo. 849, 136 S. W. 2d 303; *Engle-*

*hardt* v. *Philipps,* 136 Ohio St. 73, 23 N. E. 2d 829; *Micek* v. *Weaver-Jackson Company,* 12 Cal. App. 2d 19; 54 P. 2d 768.

The owner or the occupant of premises owes to an invited person the duty to exercise ordinary care to keep and maintain the premises in a reasonably safe condition. *Koehler* v. *Ohio Valley General Hospital Association,* 137 W. Va. 764, 73 S. E. 2d 673; *Cooper* v. *Pritchard Motor Company,* 128 W. Va. 312, 36 S. E. 2d 405; *Early* v. *Lowe,* 119 W. Va. 690, 195 S. E. 852; *Starcher* v. *South Penn Oil Company,* 81 W. Va. 587, 95 S. E. 28; *Smith* v. *Sunday Creek Company,* 74 W. Va. 606, 82 S. E. 608; *Smith* v. *Parkersburg Co-operative Association,* 48 W. Va. 232, 37 S. E. 645; *Whitfield v. Cox,* 189 Va. 219, 52 S. E. 2d 72; 3 Cooley on Torts, 4th Edition, section 440; 20 R. C. L. 55. This duty requires the owner or the occupant of premises to exercise ordinary care to protect an invited person from injury inflicted by other persons present on such premises; and if such owner or occupant fails to perform such duty and his negligence is the proximate cause of injuries inflicted upon an invited person by another person such owner or occupant is liable to such injured invited person. See *Rawson* v. *Massachusetts Operating Company, Inc.,* 328 Mass. 558, 105 N. E. 2d 220, 29 A. L. R. 2d 907; *Carlin* v. *Smith,* 148 Md. 524, 130 A. 340, 44 A. L. R. 193; Annotation 2, 29 A. L. R. 2d 913. The owner or the occupant of premises, however, is not liable for injuries occurring on the premises which are caused by a third person who is not the agent, servant or employee of such owner or occupant, unless the circumstances are such that liability can be based on the theory of the existence of a public nuisance or of a dangerous condition of which he knows or should have known and he has failed to take reasonable precautions to remedy such condition; and generally the proprietor of a business is not liable for injuries caused by the independent acts of third persons. 38 Am. Jur., Negligence, section 103. See *Noonan* v. *Sheridan,* 230 Ky. 162, 18 S. W. 2d 976; *Kelley* v. *Jordan Marsh Company,* 278 Mass. 101, 179 N. E. 299; *Snyder* v. *Salwen,* 317 Pa. 531, 177 A. 789; *Whitfield* v. *Cox,* 189 Va. 219, 52 S. E. 2d 72.

In the case at bar the alleged negligence of the defendant is the basis of the plaintiff's claim, and if the evidence does not establish a situation or a condition from which the jury could reasonably find that the defendant was guilty of negligence which was the proximate cause of the injuries sustained by the plaintiff, the plaintiff can not recover. As heretofore pointed out the defendant was not an insurer of the safety of the plaintiff; and the doctrine of res ipsa loquiter does not apply to the facts of this case. "To be actionable, negligence must be the proximate cause of the injury complained of and must be such as might have been reasonably expected to produce an injury." Point 3, syllabus, *Hartley* v. *Crede,* 140 W. Va. 133, 82 S. E. 2d 672. See also *Stenger* v. *Hope Natural Gas Company,* 139 W. Va. 549, 80 S. E. 2d 889; *Matthews* v. *Cumberland Allegheny Gas Company,* 138 W. Va. 639, 77 S. E. 2d 180; *State ex rel. Cox* v. *Sims,* 138 W. Va. 482, 77 S. E. 2d 151; *McKinney* v. *Miller,* 138 W. Va. 324, 75 S. E. 2d 854.

The opinion of this Court in the *Matthews* case contains these pertinent statements: "Actionable negligence necessarily includes the element of reasonable anticipation that some injury might result from the act of which complaint is made. *Koehler, Admr.* v. *Waukesha Milk Company,* 190 Wis. 52, 208 N. W. 901. Failure to take precautionary measures to prevent an injury which if taken would have prevented the injury is not negligence if the injury could not reasonably have been anticipated and would not have happened if unusual circumstances had not occurred. *State ex rel. Cox* v. *Sims,* 138 W. Va. 482, 77 S. E. 2d 151; *Dennis* v. *Odend'Hal-Monks Corporation,* 182 Va. 77, 28 S. E. 2d 4; *Virginia Iron, Coal & Coke Company* v. *Hughes, Adm'r.,* 118 Va. 731, 88 S. E. 88. 'Where a course of conduct is not prescribed by mandate of law, foreseeability of injury to one to whom duty is owed is of the very essence of negligence.' 13 M. J., Negligence, section 22. *Cleveland* v. *Danville Traction & Power Company,* 179 Va. 256, 18 S. E. 2d 913. A person is not liable for damages which result from an event which was not expected and could not have been anticipated by an ordinarily prudent person.

*Barbee* v. *Amory,* 106 W. Va. 507, 146 S. E. 59; *Consumers' Brewing Company* v. *Doyle's Adm'x.,* 102 Va. 399, 46 S. E. 390; *Fowlks* v. *Southern Railway Company,* 96 Va. 742, 32 S. E. 464; *Southern Railway Company* v. *Bell,* 4 Cir., 114 F. 2d 341. 'If an occurrence is one that could not reasonably have been expected the defendant is not liable. Foreseeableness or reasonable anticipation of the consequences of an act is determinative of defendant's negligence.' *Dennis* v. *Odend'Hal-Monks Corporation,* 182 Va. 77, 28 S. E. 2d 4. In the recent case of *Wilson* v. *Edwards,* 138 W. Va. 613, 77 S. E. 2d 164, this Court used this quotation from the case of *Osborne* v. *Atlantic Ice & Coal Company,* 207 N. C. 545, 177 S. E. 796: 'The law only requires reasonable foresight, and when the injury complained of is not reasonably foreseeable, in the exercise of due care, the party whose conduct is under investigation is not answerable therefor. Foreseeable injury is a requisite of proximate cause, and proximate cause is a requisite for actionable negligence, and actionable negligence is a requisite for recovery in an action for personal injury negligently inflicted.' "

Upon the trial of this case the burden rested upon the plaintiff to establish primary negligence of the defendant which was the proximate cause of the injuries for which the plaintiff seeks a recovery. This the plaintiff has failed to do. As an ordinarily prudent person, none of the agents, servants and employees of the defendant, who were present and in charge of its place of business and acting for and in its behalf when the plaintiff was injured by the intoxicated person who caused him to fall, could reasonably have anticipated or foreseen that such intoxicated person would have molested or injured the plaintiff. The testimony of the witnesses with respect to the condition of the intoxicated person indicates that they considered him, because of the degree of his intoxication, to be unable to care for himself or to injure any other person. His conduct was neither violent nor boisterous. He made no threats or no threatening moves or gestures. From the remark which the plaintiff testified he made to Fisher that

the intoxicated person "was an ambulance case" the plaintiff apparently believed that the intoxicated person was himself in need of care, assistance and protection against stumbling or falling and injuring himself. The plaintiff did not consider the intoxicated person dangerous and did not anticipate or expect any injury from him. Plaintiff's witness Laird, who was standing near the plaintiff when he was injured, likewise did not regard the intoxicated person as dangerous and it is evident that he did not expect any injury from him. It can not be said that the agents, servants and employees of the defendant, as ordinarily prudent persons, could reasonably anticipate or foresee injurious acts or conduct by the intoxicated person which the plaintiff himself, as an ordinarily prudent person, could not reasonably anticipate or foresee. In the circumstances disclosed by the evidence concerning the acts, the conduct, and the condition of the intoxicated person, the defendant was not required to eject him from or to prevent his reentry to its place of business.

Numerous decisions in various jurisdictions involving the question of liability of the owner or the occupant of premises used for business purposes for injuries inflicted upon an invited person by a third person present many different factual situations and reach variant results. It would serve no useful purpose to cite, refer to, or discuss any substantial number of those many decisions. In the cases in which an invited person injured upon such premises was held to be entitled to recover, the acts and the conduct of the third person who injured the plaintiff were such that the defendant, as an ordinarily prudent person, could have reasonably anticipated or foreseen that such acts and conduct would naturally or probably produce an injury and it appeared that the defendant had failed to exercise due care to safeguard and protect the plaintiff from injury. In the cases in which a recovery was denied, the acts and the conduct of the third person who injured the plaintiff were such that the defendant, as an ordinarily prudent person, could not have reasonably

anticipated or foreseen that such acts and conduct would naturally or probably produce an injury.

The case of *Rawson* v. *Massachusetts Operating Company*, 328 Mass. 558, 105 N. E. 2d 220, 29 A. L. R. 2d 907, is one of the group of cases which permit a recovery by the plaintiff, and the case of *Whitfield* v. *Cox*, 189 Va. 219, 52 S. E. 2d 72, is one of the group of cases in which the plaintiff was denied a recovery.

In the *Rawson* case the defendant, owner and operator of a theater, was held liable for injuries inflicted upon the plaintiff, a patron, by one of a group of six or seven young men who had engaged in boisterous and rowdy conduct for approximately forty five minutes before the plaintiff was struck and injured, and no effective action had been taken by the employees of the defendant to stop the rowdy conduct of the group. The facts in the *Rawson* case were sufficient to show that the injury to the plaintiff could have been reasonably anticipated and that the defendant had failed to take reasonable precautions to prevent the injury.

In the *Whitfield* case the plaintiff was struck in the face by an empty whiskey bottle thrown by some unidentified person while the plaintiff was attending a wrestling match staged by the defendant. The plaintiff based her right to recover on the alleged negligence of the defendant in failing to exercise due care to protect her from injury as an invited person in attendance at the matches. While the matches were being conducted and before the plaintiff was injured there were several instances of disorderly conduct by persons in the crowd of about two or three thousand spectators. A sailor in the audience who, after having made threats against one of the wrestlers, arose and started toward the ring in which the wrestlers were engaged and at that time some other unidentified person in the audience threw the bottle which struck and injured the plaintiff. The defendant had provided five ushers and four ticket takers and five policemen had been assigned to patrol the crowd of two or three thousand persons in attendance. There were eight other policemen who voluntarily attended the matches. The defendant had also

forbidden drinking or sale of intoxicants and had obtained the passage of an ordinance requiring sale of soft drinks in paper cups. In reversing a judgment in favor of the plaintiff the Supreme Court of Appeals of Virginia used this language: "It was not the duty of the defendant to keep the crowd quiet. The antics of the crowd seemed to be part of the attraction. The plaintiff said she would rather watch the people's faces than the matches. The duty on the defendant was to use reasonable care to protect the plaintiff from dangers that could reasonably be anticipated. The evidence does not, we think, establish a breach of that duty or any causal connection between such an alleged breach and the plaintiff's injury."

As the evidence in the case at bar does not establish primary negligence of the defendant which was the proximate cause of the injuries sustained by the plaintiff, because injury to another person could not reasonably have been anticipated or foreseen from the acts, the conduct and the demeanor of the intoxicated person, the trial court should have given Instruction No. 1, offered by the defendant, which would have directed the jury to return a verdict in its favor, and, having refused to give the instruction, it should have sustained the motion of the defendant to set aside the verdict and grant it a new trial. The refusal of the trial court to do either constituted reversible error. "Where in a trial in an action at law before a jury, the verdict returned is without evidence to support it, or is plainly wrong, it will be set aside by this Court, the judgment entered thereon reversed, and the case remanded for a new trial." Syllabus, *DeLuz* v. *Board,* 135 W. Va. 806, 65 S. E. 2d 201; point 1, syllabus, *Wickline* v. *Monongahela Power Company,* 139 W. Va. 732, 81 S. E. 2d 326. See also *Ferguson* v. *Pinson,* 131 W. Va. 691, 50 S. E. 2d 476; *Closterman* v. *Lubin,* 113 W. Va. 353, 167 S. E. 871; *Armour Fertilizer Works* v. *Finnell,* 110 W. Va. 416, 158 S. E. 510; *Cannady* v. *Chestonia,* 106 W. Va. 254, 145 S. E. 390; *Maguet* v. *Frantz,* 95 W. Va. 727, 124 S. E. 117, 37 A. L. R. 1450.

In view of the conclusion reached upon the controlling question of the insufficiency of the proof to establish action-

able negligence, it is unnecessary to consider or discuss the other grounds assigned and relied upon by the defendant to reverse the judgment of the circuit court and the judgment of the court of common pleas, except to say that, for the reasons hereafter stated, Instruction No. 7 and Instruction No. 8, offered by the defendant, were properly refused.

Instruction No. 7 did not correctly propound the law relative to an intervening cause of an injury. Such a cause is a negligent act or omission which constitutes a new effective cause and which, operating independently of anything else, is the proximate cause of an injury. *Hartley* v. *Crede,* 140 W. Va. 133, 82 S. E. 2d 672.

Instruction No. 8, dealing with proximate cause, failed to state that the last negligent act which contributed to the injury must be such that without that act the injury would not have resulted. The proximate cause of an injury is the last negligent act contributing to the injury and without which the injury would not have resulted. *Matthews* v. *Cumberland and Allegheny Gas Company,* 138 W. Va. 639, 77 S. E. 2d 180; *Webb* v. *Sessler,* 135 W. Va. 341, 63 S. E. 2d 65; *Estep* v. *Price,* 93 W. Va. 81, 115 S. E. 861; *Schwartz* v. *Shull,* 45 W. Va. 405, 31 S. E. 914. One requisite of proximate cause is an act or an omission which an ordinarily prudent person could reasonably foresee might naturally or probably produce an injury, and the other requisite is that such act or omission did produce the injury. *Matthews* v. *Cumberland and Allegheny Gas Company,* 138 W. Va. 639, 77 S. E. 2d 180; *Washington and Old Dominion Railway* v. *Weakley,* 140 Va. 796, 125 S. E. 672; *Virginia Iron, Coal and Coke Company* v. *Hughes, Adm'r.,* 118 Va. 731, 88 S. E. 88.

The foregoing judgments are reversed, the verdict of the jury is set aside, and this case is remanded to the court of common pleas for a new trial which is here awarded the defendant.

*Judgments reversed;*
*verdict set aside;*
*new trial awarded.*